STATE v. RAYMOND DOWELL.

(Filed 2 May, 1928.)

**1. Intoxicating Liquor — Criminal Prosecution — Unlawful Possession—
Burden of Proving Exception or Provisos to Statute—Statutes.**

Under 3 C. S., 3411(j), making the possession of intoxicating liquor
prima facie evidence of unlawful purpose, the State is not required to
allege or prove that the case does not fall within the exception allowing
possession in a man's dwelling for his personal use, the use of his family,
or the entertainment of his bona fide guests therein, this being a matter
of defense, must be alleged and proven by the defendant.

**2. Same—Prima Facie Case—Nonsuit.**

Where intoxicating liquor is found in the possession of the defendant,
and he does not take the witness stand or offer evidence to prove himself
within the exception relating to possession in his dwelling for his personal
use allowed by the only exception to the statute, and the State has made
out a prima facie case of possession, a motion as for nonsuit is properly
overruled. C. S., 4643.

**3. Same—Burden of Proof.**

Where the State has introduced evidence tending to show the unlawful
possession of intoxicating liquor by the defendant, making out a prima
facie case of its being for an unlawful purpose, the burden of proof is on
the State to show guilt of defendant beyond a reasonable doubt, and the
defendant is required to show that his possession was within the statutory
exception.

BROGDEN, J., dissenting.

APPEAL by defendant from *Stack, J.,* at September Term, 1927, of
FORSYTH. No error.

The bill of indictment contained 5 counts and charged that defend-
ant (1) unlawfully did sell, barter, furnish, and deliver intoxicating
liquor; (2) unlawfully did transport, import and export intoxicating
liquor; (3) unlawfully did purchase intoxicating liquor; (4) unlaw-
fully did possess intoxicating liquor; (5) unlawfully did have in posses-
sion intoxicating liquor for the purpose of being sold, bartered, ex-
changed, given away, furnished and otherwise disposed of in violation
of the provisions of the act of the General Assembly of North Carolina,
enacted at its session 1923, and ratified 1 March, A.D. 1923, being
entitled "An act to make the State Law conform to the National Law
in relation to intoxicating liquors."

The testimony was to the effect that Guy Scott, a deputy sheriff, in
consequence of information received in regard to defendant, procured a
search warrant and went with E. J. Conrad and L. Newsom to de-

fendant's home, about 5 miles south of Winston-Salem, on the Lexington road. It was in the middle of the afternoon. "When I was getting out of the car I heard some glass rattling in the house. I ran in the house, and when I went in the kitchen door I met Raymond Dowell's wife coming out of the door. I went in through the kitchen, and into the room, and in that room there was an old like hearth, and liquor was about half an inch deep in this hearth, and a gallon jug and a half-gallon fruit jar had been broken, lying there, and I looked out and saw Dowell going through the field and Mr. Conrad after him. The hearth where the liquor was on it was in the bed room. There were three rooms in this house. This was the defendant's dwelling-house. He and his family lived there, or he said he did."

L. Newsom corroborated Guy Scott, in regard to the liquor and testified further: "As we went in the kitchen door Raymond Dowell jumped out of the bed-room window, which was the middle room, and which was the room the whiskey was in. Defendant ran right down through the field, and Mr. Conrad ran after him and caught him. Mr. Conrad is an officer. . . . The floor was wet all along the floor around the hearth and on the hearth, and a plank torn up in the floor, and there were three empty jugs under the floor. That was the same room in which we found the liquor on the hearth. Defendant jumped out of the window of that room and ran. There was one bed in that room." The defendant introduced no evidence.

The verdict of the jury was we "find the defendant guilty of unlawful possession of intoxicating liquors and possession of intoxicating liquors for the purpose of sale."

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*John D. Slawter for defendant.*

CLARKSON, J. The defendant moved to dismiss each and every count in the bill of indictment. The court below allowed the motion as to the first, second and third counts, but declined to grant the motion for judgment as of nonsuit or dismiss the action as to the fourth and fifth counts in the bill of indictment. C. S., 4643. We think the court below correct.

Chapter 1, sec. 1, Laws 1923 (known as the Turlington or Conformity Act) in part, is as follows: "The word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whiskey, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquors, liquids, and compounds,

whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume, which are fit for use for beverage purposes," etc. 3 C. S., 3411(a).

Section 2: "No person shall manufacture, sell, barter, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor except as authorized in this act; and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented. Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished, and possessed, but only as provided by Title II of 'The Volstead Act,' act of Congress enacted October twenty-eight, one thousand nine hundred and nineteen, an act supplemental to the National Prohibition Act, 'R. 7294,' an act of Congress approved November twenty-third, one thousand nine hundred and twenty-one." 3 C. S., 3411(b).

Section 10, is as follows: "From and after the ratification of this act the possession of liquor by any person not legally permitted under this act to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this act: But it shall not be unlawful to possess liquor in one's private dwelling only, while the same is occupied and used by him as his dwelling only, provided such liquor is for use only for the personal consumption of the owner thereof, and his family residing in such dwelling, and of his bona fide guests when entertained by him therein." 3 C. S., 3411(j).

The court below, after defining what was actual and constructive possession (S. v. Meyers, 190 N. C., 239), charged the jury, in part, as follows: "The court instructs you that the burden of proof is upon the State to satisfy you beyond a reasonable doubt that he had the liquor in his possession, either actual or constructive, and the court further instructs you that if he did have it in his possession that it would be unlawful, unless he had it in his home for his own use, for his own personal use or the use of his bona fide friends or guests. The possession of liquor anywhere in the home or out of the home is prima facie evidence that he is keeping it for the purpose of violating the law. It is prima facie evidence that he is keeping it in violation of the law, and what is meant by that is, that it is artificial evidence created by the law from certain facts and sufficient to carry the case to the jury, and upon which the jury may act either way. The defendant has not gone upon the stand and testified, but you cannot use that to his prejudice. The court instructs you that if he had this liquor in his home for the purpose

of selling it, or for the purpose of giving it away, except as mentioned in the statute, or for the purpose of furnishing it to somebody else, except as mentioned in the statute, he would be guilty, but if he had it in his home for his own bona fide use, his personal use or the use of his bona fide guests, then he would not be guilty (and the court instructs you as to whether or not he had it for that purpose is a matter that is within his own knowledge alone and therefore, the burden is upon him to show that he had it for his own consumption or for the use of his bona fide guests)." The only part of the charge to which exception and assignment of error was made, was the latter part of the charge above set forth in brackets.

The charge of the court was confined to the 4th and 5th counts which we are now considering, the counts under which defendant was convicted: (1) unlawfully did possess intoxicating liquors; (2) unlawfully did have in possession intoxicating liquor for the purpose of being sold.

(1) Under the above statutes, it is unlawful for any person to possess liquor (except as authorized in the act not material here to be considered) and *"except in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquor is for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein."* The possession of liquor in the private dwelling for any other purpose than as above stated in the exception is unlawful. (2) "The possession of liquor by any person not legally permitted under this act to possess liquor shall be primâ facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this act." This prima facie evidence for sale, etc., applies to the private dwelling or elsewhere. *S. v. Mull,* 193 N. C., p. 668.

We have heretofore construed the act applicable to facts as they were presented in this Court in the particular case. In *S. v. McAllister,* 187 N. C., p. 403, it was held unlawful to possess liquor when not "in one's private dwelling while the same is occupied and used by him as his dwelling only . . . for use only for the personal consumption of the owner thereof and the family residing in such dwelling and of his bona fide guests when entertained by him therein." *S. v. Meyers,* 190 N. C., 239; *S. v. Sigmon,* ibid., 684; *S. v. Baldwin,* 193 N. C., 566. In *S. v. Hammond,* 188 N. C., p. 602, it was held that the statute did not prohibit the receiving of liquor.

In *S. v. Knight,* 188 N. C., 630, evidence tending to show that the defendant had intoxicating liquor in his possession before the passage of the act, is not a defense under its provisions for the defendant's posses-

sion a year thereafter upon an indictment under the act of possessing liquor. The liquor in controversy was not in his private dwelling.

In *S. v. Mull,* 193 N. C., 668, the liquor was in the private dwelling, there was a verdict of "guilty of receiving and possessing." Under *Hammond's case, supra,* the verdict for receiving could not be sustained, nor could the verdict for possessing, as the possession was not alleged or shown to be unlawful; and further, the liquor was not in the actual or constructive possession of defendant.

In *S. v. Winston,* 194 N. C., p. 243, it is held: While section 10 of the Turlington Act (chapter 1, Public Laws 1923, 3 C. S., 3411(j), *supra*) does not make it a criminal offense for one to have intoxicating liquor in one's private dwelling, occupied and used by him as his dwelling only, for his own personal use or that of his family residing in such dwelling and his bona fide guests when entertained by him therein, it is a violation of the criminal law, by the express provisions of (chapter 1, Public Laws 1923, sec. 2), 3 C. S., 3411(b), for him to either purchase it elsewhere or carry it there.

In *S. v. Pierce,* 192 N. C., at p. 770, the following charge was sustained: " 'Prima facie evidence means that evidence which is received and accepted and continued until the contrary is shown, and you gentlemen of the jury, will remember the evidence, giving the State of North Carolina a fair and an impartial trial, and giving the defendant at bar a fair and impartial trial.' This instruction, standing alone, may be subject to some criticism (*S. v. Wilkerson,* 164 N. C., p. 431), but in this immediate connection the judge charged the jury as follows: 'Now the State has the duty of satisfying you beyond a reasonable doubt of the guilt of the defendant,' etc., and defined reasonable doubt."

In *S. v. Smith,* 157 N. C., at p. 583, quoting from Joyce on Indictments, sec. 279, the following principle is laid down: "The general rule as to exceptions, provisos, and the like, is that where the exception or proviso forms a portion of the description of the offense, so that the ingredients thereof cannot be accurately and definitely stated if the exception is omitted, then it is necessary to negative the exception or proviso. But where the exception is separable from the description and is not an ingredient thereof, it need not be noticed in the accusation; for it is a matter of defense. But where there is an exception so incorporated with the enacting clause that the one cannot be read without the other, then it is held that the exception must be negatived." *S. v. Connor,* 142 N. C., 700; *S. v. Moore,* 166 N. C., 284; *S. v. Hege,* 194 N. C., 526.

The court below charged correctly as to prima facie evidence. The burden of proof was placed on the State all through the charge and the

court below stated several times that the evidence must be sufficient to satisfy the jury beyond a reasonable doubt as to the guilt of defendant. It was not necessary to negative the exception, for it was a matter of defense.

In Archbold's Criminal Pleading, the principle is thus stated (quoting from *S. v. Connor, supra,* at p. 704) : "These negative averments seem formerly to have been proved in all cases by the prosecutor; *but the correct rule upon the subject seems to be in cases where the subject of such averment relates to the defendant personally, or is peculiarly within his knowledge,* the negative is not to be proved by the prosecutor, but, on the contrary, *the affirmative must be proved by the defendant, as matter of defense;* (Italics ours) but, on the other hand, if the subject of the averment does not relate personally to the defendant, or be not peculiarly within his knowledge, but either relate personally to the prosecutor, or be peculiarly within his knowledge, or at least be as much within his knowledge as within the knowledge of the defendant, the prosecutor must prove the negative." The principle is well settled in this State. See *Speas v. Bank,* 188 N. C., at p. 529 and cases cited; *Walker v. Parker,* 169 N. C., 150; *Shaw v. Public-Service Corp.,* 168 N. C., 611.

In construing the *Harrison Anti-Narcotic Act,* dealing with the presumption created by statute, in *Gee Woe v. United States,* 250 Fed. Rep., at p. 429, it is said : "That presumption of this and like kind, rebuttable and explainable by the accused persons, are within the competency of Congress to create, it is well settled. *Luria v. United States,* 231 U. S., 9-25, 34 Sup. Ct., 10, 58 L. Ed., 101; *United States v. Yee Fing* (D. C.), 222 Fed., 154."

In *Casey v. United States, Mr. Justice Holmes* delivering the opinion of the Court (9 April, 1928) construing said act, says : "With regard to the presumption of the purchase of a thing manifestly not produced by the possessor, there is a 'rational connection between the fact proved and the ultimate fact presumed,' *Luria v. United States,* 231 U. S., 9, 25; *Yee Hem v. United States,* 268 U. S., 178, 183. Furthermore there are presumptions that are not evidence in a proper sense but simply regulations of the burden of proof. *Greer v. United States,* 245 U. S., 559. The statute here talks of prima facie evidence but it means only that the burden shall be upon the party found in possession to explain and justify it when accused of the crime that the statute creates. 4 Wigmore, Evidence, sec. 2494. It is consistent with all the constitutional protections of accused men to throw on them, the burden of proving facts peculiarly within their knowledge and hidden from discovery by the government. 4 Wigmore, Evidence, sec. 2486. In dealing with a poison not commonly used except upon a doctor's prescription easily proved, or for a debauch only possible by a breach of law, it seems reasonable to

call on a person possessing it in a form that warrants suspicion to show that he obtained it in a mode permitted by the law. The petitioner cannot complain of the statute except as it affects him."

In *Donnelley v. United States, Mr. Justice Butler,* delivering the opinion of the Court (9 April, 1928), says: "The act is comprehensive and discloses a legislative purpose fully to enforce the prohibition declared by the Eighteenth Amendment. National Prohibition Cases, 253 U. S., 350. *Corneli v. Moore,* 257 U. S., 491; *Vigliotti v. Pennsylvania,* 258 U. S., 403; *Grogan v. Walker & Sons,* 259 U. S., 80; *Everard's Breweries v. Day,* 265 U. S., 545, 560; *Lambert v. Yellowley,* 272 U. S., 581, 595."

The charge in other respects was fair and impartial, giving defendant every legal right. We find in law

No error.

BROGDEN, J., dissenting: The Turlington Act by express terms declares that it shall not be unlawful for a person to possess liquor in his own dwelling provided it is to be used only for the personal consumption of the owner and his family therein residing and his bona fide guests when entertained therein by such owner.

In construing the statute it has been held that possession of liquor even within the home of the owner is prima facie evidence that he is keeping it for the purpose of violating the law. In other words a lawful act is prima facie evidence of an unlawful purpose. Albeit, this is water that has long since gone over the wheel.

The judge charged in accordance with the decisions applicable, that the possession of liquor in the home of the defendant was prima facie evidence that he had it there in violation of the law. This carried the case to the jury. Under the law, the defendant had two alternatives. He could offer evidence in his defense, or he could decline to offer evidence and rely upon the weakness of the State's case supported in either event by the presumption of innocence which the law raised in his favor. The defendant pleaded not guilty. His plea denied the possession of the whiskey and every other element of the crime. He offered no evidence.

The trial judge, however, went further and instructed the jury: "The burden is upon him to show that he had it for his own consumption or for the use of his bona fide guests."

This charge, as I see it, is erroneous for the following reasons:

1. It deprived the defendant of the right to rely upon the weakness of the State's case, because it imposed upon him the burden of showing that the possession was not unlawful or to state the proposition differently, the burden was upon him to rebut the prima facie case made out by the State.

34—195

STATE v..DOWELL.

2. It deprived the defendant of the benefit of the presumption of innocence, because the presumption of innocence and the burden of rebutting the prima facie evidence of the State cannot exist at the same time and run concurrently throughout the trial.

The opinion of the Court, however, proceeds upon the theory that the proviso of section 10 of the Turlington Act is a matter of defense and therefore the burden is upon the defendant to show that he comes within the proviso, that is to say, he possessed the liquor in his home for his personal use or for the entertainment of his bona fide guests. The authorities cited in support of this position are *S. v. Connor,* 142 N. C., 700; *S. v. Moore,* 166 N. C., 284; *S. v. Hege,* 194 N. C., 526. In the *Hege case* the liquor was found in the basement of defendant's store and not in his dwelling at all. Obviously the proviso referred to did not apply. In the *Moore case* the main question involved was sufficiency of allegations in the warrant, and related to what the State ought to allege and prove. In the *Connor case* the judge charged the jury "that the burden was on the defendant to prove that the woman in the case was neither innocent nor virtuous," but the Court held that this instruction was error and awarded a new trial for such specific error. The opinion declares: "In such circumstances, a defendant charged with the crime who seeks protection by reason of the exception, has the burden of proving that he comes within the same." As I interpret it, it does not support the opinion of the Court in the case at bar, but is rather to the contrary. Moreover the defendant in this case did not go upon the witness stand or offer evidence to the effect that the whiskey was possessed by him for his own consumption or for his bona fide guests. If he had sought the protection of the proviso, then the charge complained of would perhaps have been correct.

In *S. v. Wilkerson,* 164 N. C., 434, it is declared: "How can we say that prima facie evidence, or that which is apparently sufficient, excludes all reasonable doubt of guilt, and by its own force overcomes the presumption of innocence? The bare statement of the proposition is sufficient to show its fallacy. It would destroy the presumption of innocence and take away the protection of the other rule as to reasonable doubt. The presumption of innocence attends the accused throughout the trial and has relation to every essential fact that must be established in order to prove his guilt beyond a reasonable doubt. He is not required to show his innocence; the State must prove his guilt." It will be noted that in the *Wilkerson case* the court charged that if the jury had a reasonable doubt they should acquit the defendant. Liquor cases do not involve the "shifting of the burden" as pointed out in *S. v. Redditt,* 189 N. C., 176, and that line of cases.

In *S. v. Hammond,* 188 N. C., 602, the defendant offered no evidence as in the case at bar, and requested the court to charge the jury as follows: "If the jury find from the evidence that the house in which the intoxicating liquors in question were found was at the time used and occupied as the dwelling only of defendant and such liquors were for her personal consumption only and her bona fide guests, when entertained by her therein, the jury will return a verdict of not guilty." The court refused to give this instruction. *Chief Justice Hoke,* writing the opinion, said, "We think the prayer embodies a correct proposition, so far as the charge of unlawful possession is concerned, and should have been given if restricted to that count, but the failure or refusal to give the instruction may not be held for reversible error because such refusal does not necessarily or probably affect the verdict on the other counts in the bill. As heretofore stated, there is a general verdict of guilty, amounting to a conviction on each and every count in the bill, and the prayer could not have been properly given because of the requested direction therein of a general verdict of not guilty."

In the case at bar there was a nonsuit as to all counts except the fourth and fifth, and both of these counts charge unlawful possession. Applying the rule announced in the *Hammond case* to the case at bar, the defendant would have been entitled to the charge referred to in the *Hammond case,* which charge or instruction has no reference whatever to any "burden" to show that he had the whiskey for his own consumption, etc.

Upon the facts disclosed by the present record, it appears to me that the *Hammond case* is decisive of the point.

In *Casey v. United States,* referred to in the opinion of the Court, the question involved was one of purchase and not of possession. Moreover, the decision was rendered by a sharply divided Court. *Mr. Justice Butler* dissenting, declared: "And above all, the statutory rule of evidence should be construed having regard to the ancient and salutary doctrine known and rightly cherished as fair play by the people, the bar and the courts of this country, that every person on trial for crime is presumed to be innocent; and, that in order to convict him, the evidence must satisfy the jury beyond a reasonable doubt that he is guilty of the crime charged. . . . The connection, if any, between the possession shown and the substance of the offense charged is too remote. Attention has not been called to any decision that goes so far. None can be found."