STATE v. C. A. MEYERS.

(Filed 7 October, 1925.)

**1. Intoxicating Liquor—Evidence—Turlington Act—Nonsuit.**

A motion for nonsuit upon the evidence on the trial for a violation of the prohibition law, will be denied when, though circumstantial, it is sufficient upon the question of possession and unlawful transportation of intoxicating liquor.

**2. Same—Possession—Instructions—Appeal and Error.**

The possession of spirituous liquor in contemplation of the Turlington Act may be either actual or constructive, but must be such as to place it within the control or use of the defendant upon trial, and it is insufficient if it was found upon lands he had leased, with his knowledge of its having been there; and an instruction to the jury otherwise is reversible error.

APPEAL by defendant from SAMPSON Superior Court. *Lyon, J.*

Indictment for violation of prohibition law, and from a judgment pronounced upon a verdict of guilty, the defendant appeals. New trial.

The defendant was charged with possessing, transporting, exporting, importing, purchasing and receiving intoxicating liquors in violation of the Turlington Act, which is chapter 1, Public Laws 1923.

The State's evidence tended to show that two officers, Honeycutt and Tew, searched the defendant's premises for intoxicating liquors three times; the first search on Sunday in August, 1923, resulted in finding nothing; on a Monday in September they searched again the premises and found no whiskey this time, but did find an impression on the ground in 15 steps, and in the rear, of the defendant's barn. This impression was like that of a jug. The defendant was not then at home. The third search was in November; the defendant was present and they found no evidence of liquor in his dwelling or outbuildings, but did find a track leading from the barn, which was on the other side of the public road from the dwelling, and this track went from the barn down to his hog lot in a mulberry orchard down beside the public road in a corner of his field near to Mrs. Denning's field. This track from the barn down beside the hog lot led on to Mrs. Denning's line fence; there a woman's track was coming toward the public road, joining the other tracks, and these tracks went down beside the line fence on defendant's side of the line fence to a ditch in defendant's field. This ditch was some 75 yards from the hog lot and about 100 yards from the public road. The tracks thence led down the ditch about 20 yards from the line fence; and these officers, following the tracks, found there a three-gallon jug in the ditch, about two gallons of whiskey in the jug. The ditch and the jug were about 150 yards from defendant's dwelling on the lands that he had rented from one Tart for that year. The officers did not find any tracks from the jug in the ditch to defendant's house or barn. Further down the same ditch they found a five-gallon jug in an old fertilizer sack near the end of the bridge over the ditch. This jug had only the odor of whiskey in it.

One Blackman testified that, on the day in September when the officers searched defendant's premises, he visited the premises and found a three-gallon jug, about half full of whiskey, in the pea vines about 15 steps just back of defendant's barn, and there were tracks leading to and from the jug towards the barn. This jug was where the impression on the ground was discovered by the two officers.

There was evidence tending to show defendant's bad character.

The defendant's evidence tended to show, as testified by defendant himself, that he was a tenant farmer, 35 years old; rented the farm from Tart in 1924, and that he did not drink or sell whiskey, and did not have any; that the officers came to his home in August and wanted to search his premises and he told them to search all they wanted to; that they searched his buildings and found no whiskey; that in September when they came back they searched his buildings again and found nothing, except the print in his cornfield of a bucket where his wife was gathering roasting ears; that in November when the officers came and wanted to search he told them to proceed, and that they opened up his buildings and found nothing; that Mr. Honeycutt went from his barn down to the mulberry orchard where the defendant had formerly come to and from feeding his hogs. The mulberry orchard is about 200 yards down the public road at the corner of the field next to the road and Mrs. Denning's fence; that the officer then went about 45 yards down the fence to a ditch and came back with a two-gallon jug half full of corn whiskey, which he said he found in the ditch about 12 feet from Mrs. Denning's fence. Defendant said he knew nothing about the whiskey and had not been at that ditch or in the field near to the ditch since May, when he cut oats. The field was not cultivated after the oats were cut; that he saw the tracks from the public road leading to and from the jug, but they were not his tracks, they were larger. These tracks led from the public road near Mr. Jones' residence, 205 yards down the road from his home. These tracks came down beside the fence on the Denning side and got over the fence into the field at the ditch where the jug was. Several other people saw these tracks. There were no tracks across the oat patch leading up to the house. There was a marriage at his house on Saturday night before the liquor was found Monday morning. His brother-in-law, who lived with him, got married. There was a crowd there Saturday night late and some were drinking and he made two men leave. He did not know where they got their liquor; did not see any or drink any. There was an orchard on this place and his wife had some fruit jars in the house in which to can the fruit; they were new jars, and never had any whiskey in them. His wife was unable to attend the trial.

R. A. Denning testified that he put the jug in the sack under the bridge; that he was going to Coats for syrup and Mrs. Meyers, who was in the field cutting corn, told him that Coats' syrup was sour and could not be used; that he stopped and helped her cut corn and set the jug under the bridge; that it was about 10 September when he left his jug there; that he was over to defendant's house when defendant's wife was gathering roasting ears in the field; that she set a water bucket

on the ground and he helped her fill it with roasting ears. That was the day Honeycutt came and saw the print of the bucket in the field.

There was other testimony tending to show defendant's contention as to the tracks, and that defendant's character is good.

The court charged the jury as follows:

"The defendant is indicted on three counts, one for the unlawful possession of intoxicating liquors for the purpose of sale, and the second for unlawful transporting, exporting, and importing intoxicating liquors, and third for unlawful receiving, having on hand and possessing liquors under the statute.

"There is evidence on the part of the State that the defendant had possession of this farm, cultivating it for the year 1924, and that this jug with liquor in it was in a ditch on this farm, and was therefore in the possession of the defendant, and if that whiskey was there to the knowledge of the defendant and you so find beyond a reasonable doubt, then I charge you that the defendant would be guilty and you should return a verdict of guilty under the bill of indictment."

The defendant excepted to this charge, and to the refusal of the court to dismiss as upon nonsuit.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*C. L. Guy and Butler & Herring for defendant.*

VARSER, J. There was no error in refusing defendant's motion to dismiss as upon nonsuit. The evidence was sufficient to be submitted to the jury upon the question of the possession, and of unlawful transportation of intoxicating liquors. The evidence is largely circumstantial, but sufficient to take these issues to the jury.

The exception, however, to the charge of the court, as disclosed in the statement of case on appeal agreed upon by the solicitor and counsel for the defendant, presents a more serious question. The defendant's plea of not guilty puts in issue every element of the unlawful possession of intoxicating liquors.

The defendant's rental of the Tart place for the year 1924, for the purpose of cultivation, and his knowledge that the liquor was in the ditch, are evidence material to and to be considered on the issue of possession of the liquor. The jury may find them sufficient to support the State's allegation. Standing alone, however, these facts do not, *necessarily,* constitute the possession condemned by the statute. Possession usually implies detention or control, or the right thereto. The possession may be in one person for another, or in one for sev-

eral, or in several for another, or for themselves, and others not actually present, or however distant from the whiskey itself. Possession is the retention or enjoyment of a thing which a man holds or exercises by himself or by another who keeps or exercises it in his name. *Redfield v. Utica and S. R. Co.,* 25 Barb. (N. Y.), 58; *S. v. Washburn,* 11 Iowa, 245; *McMahon v. State,* 70 Neb., 722.

In *S. v. Washburn, supra,* defendant was indicted for having in possession counterfeit coin, and the court charged the jury that, if the defendant placed the coin and has the control and can take it into his actual possession at his pleasure, then this is possession within the meaning of the statute.

If the liquor was within the power of the defendant, in such a sense that he could and did command its use, the possession was as complete within the meaning of the statute as if his possession had been actual.

The possession may, within this statute, be either actual, or constructive. *S. v. Lee,* 164 N. C., 533; *S. v. Ross,* 168 N. C., 130; *S. v. Baldwin,* 178 N. C., 693; *S. v. Bush,* 177 N. C., 551, 554. If a man procures another to obtain liquor for him and put it in a given place, and the other performs this agreement and places the liquor, then the possession is complete. A person may be in the possession of the article which he has not at the moment about his person. 31 Cyc., 924. The Turlington Act "shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." There the constructive possession, as well as the actual possession, is in the contemplation of the statute.

In *S. v. Ross, supra,* the holding as to direction of a verdict is easily distinguishable from the case at bar. There the cocaine was in the actual possession, and under the physical control and protection of the defendant, and in a secret place made for it in his house. The defendant, Meyers, contends, and offers evidence bearing on his contention, that he had not been in close proximity to the liquor in the ditch, and that it was not his property or under his control in any manner, and that the tracks indicated that the approach was from a direction opposite to that from his dwelling, while the State's evidence tended to show guilt on Meyers' part. However, the holding in the *Ross case, supra,* as to actual and constructive possession, is clearly applicable to the case at bar.

Upon the instant record, the question of possession being a mixed question of law and fact, we are unable to approve the charge excepted to, and, therefore, there must be a

New trial.