STATE v. CARSON WEBB AND PAUL WEBB.

(Filed 28 March, 1951.)

**1. Criminal Law § 52a (1)—**

Upon demurrer to the evidence it must be taken in the light most favorable to the State. G.S. 15-173.

**2. Criminal Law § 28—**

Defendant's plea of not guilty puts in issue every element of each offense of which he stands charged.

**3. Intoxicating Liquor § 4b—**

Possession of intoxicating liquor within the meaning of G.S. 18-2 and possession of property designed for the manufacture of intoxicating liquor within the meaning of G.S. 18-4 may be either actual or constructive, it being sufficient if the liquor or the property is within the power of the defendant in such sense that he can and does command its use.

**4. Criminal Law § 52a (3)—**

While circumstantial evidence is an accepted instrumentality in the ascertainment of truth, in order to be sufficient to overrule nonsuit the circumstances must be so connected or related as to point unerringly to defendant's guilt and exclude any other reasonable hypothesis, and circumstantial evidence which is consistent with innocence or merely shows it possible that defendant committed the offense or raises a mere conjecture of guilt is insufficient to be submitted to the jury.

**5. Intoxicating Liquor § 9d—Circumstantial evidence of defendants' guilt of possession of intoxicating liquor and utensils of manufacture held insufficient for jury.**

The State's evidence tended to show that each of the two appealing defendants and also another defendant who did not appeal, lived in apartments in a large farmhouse with their respective kinsmen or families, that a quantity of corn beer, liquor and property susceptible to use in the manufacture of intoxicating liquor were found on the premises, with tracks or paths running therefrom to the house. There was no evidence tending to identify any of the tracks as those of defendants, or that the tracks from the back of the house led from any particular apartment. *Held:* There is no sufficient evidence to support a finding that either of the appealing defendants had constructive possession of either the liquor or the utensils but leaves the matter in conjecture and speculation and is insufficient to be submitted to the jury.

APPEAL by defendants from *Burgwyn, Special Judge,* at Special October Term, 1950, of JOHNSTON.

Criminal prosecution upon a bill of indictment containing two counts charging that Carson Webb, Paul Webb and W. G. Royall did on 11 October, 1950, unlawfully (1) "have in their possession 18 barrels of beer, one liquor still, oil cans, oil intended for the use in the unlawful manufacturing of intoxicating liquor," and (2) "have and possess 27½ gallons intoxicating liquor for the purpose of sale" against the form of the statute, etc.

The defendants pleaded not guilty as to both counts.

Upon the trial in Superior Court, the State offered evidence tending to show, as of 11 October, 1950, the date of the alleged offenses, a narrative substantially as follows:

Defendants reside in a large house near Four Oaks,—Golden Royall and his sister in one apartment, Paul Webb and his sister in another, and Carson Webb and his wife and family in another. They are all related by blood or marriage. The house is located "just off," and about midway a two-miles long State-maintained dirt road between two hard-surfaced highways. It turns off the hard-surfaced highway "coming from Benson," near an old millpond.

About seventy-five feet south of the house, there is a path or road or cartway leading from the dirt road in front of the house to, and by, and beyond a tobacco barn into a wooded area. This barn is about 125 yards from the dirt road, and about 100 yards from the house. There were fields around the house up to the yard and around the barn, both cultivated by Royall, and a cornfield beyond and about 150 yards from the barn. This cornfield is cultivated by Paul Webb.

Deputy Sheriff Hales, and three other officers, visited the premises above described on the day above stated. Traveling by car, they entered

the path or road leading from the dirt road. They intended to stop in the yard, but seeing a "bunch of men" at the barn, they drove on to it. As they approached, Royall went around behind the barn shelter and re-appeared in a second or two, having two men with him. The testimony of the officers varied as to who the two were. There were four men at the barn, Royall and Paul Webb and two others, Colon McGee and Charlie Tart. According to testimony of one officer the two were Paul Webb and McGee. Carson Webb was not there.

Behind, and about 12 feet from the barn, where there were several fresh foot tracks, the officers found about a quart of fresh corn meal beer in a half-gallon jar in a stump hole under a piece of tin. From the barn the officers followed fresh footprints, "going and coming" down the "wagon path or old cart path" to and across a branch, to the edge of a cornfield and into the woods,—beyond "a little streak of woods," where they found a still,—600 to 700 yards from the house and about 600 yards from the barn,—but not in sight of either the house or the barn.

The still was a 400-gallon submarine type, a 24-barrel outfit, operated by oil. Six barrels had been run out, and there were 18 to run. It was corn meal beer,—similar to the kind found at the tobacco barn.

Between the barn and the still the officers found an automobile pump,— 10 or 15 steps from the still, and two demijohns and an oil can which had the odor of liquor and oil in them. The pump was the kind used to pump air into the oil burner tank.

Also at the tobacco barn there was a big 5-gallon oil can with about a gallon of oil in it,—hanging under a big drum. About 50 feet from the barn there was a half-gallon jar of whiskey. And following a path across an oak ridge, the officers found below the ridge a pit with four or five demijohns full of "bootleg" whiskey. Close by there was another 5-gallon jar in a hole—not over 50 yards from the house. The liquor found in the wooded area or oak ridge was about 150 yards from, and in sight of the house.

Between the house and barn there was a half-gallon jar with the odor of corn beer in it,—the same kind of beer found at the tobacco barn.

At the rear of the house, under the well shelter, located about 20 feet from the house, there were a half-gallon jar with the "drainings" or corn beer in it, four or five gallon oil cans with the odor of kerosene oil in them, and a beer can with beer in it. "They got water out of the same well and under the well shelter," the officers testified. And there was a wash pot in the yard. From it there was "a little traffic," that is, foot-prints or foot path, across the cotton patch. On the fourth row of cotton behind the wash pot there were three half-gallon jars of white whiskey— about 25 feet from Paul Webb's door—and a short distance from the back door of Carson Webb's apartment. In this connection, Deputy

Sheriff Hales was asked the question, "Was there any sign or any path of traffic from the door to where you found the liquor?" In reply he stated: "One at the back door and another went out back across just on the left just behind the pump; straight out from the well shelter there was traffic, I would say as near as from here to the wall, if not nearer. The one from the corner of the back door I would say was not but just a little ways; went out here, back here and around to the left and the well shelter was straight here." And, under cross-examination, Deputy Sheriff Hales continued: "I do not know how many used that back door, as there is a back porch comes out of one apartment, and then there is a back porch from another one coming out of that kitchen. You come out on the back porch to the kitchen; they all use it, so I don't know whose tracks lead to the liquor."

The officers testified that they did not know who owned the land where the still, whiskey and beer were found. There is testimony that Annie Royall owned the house and rented it "to these people." And there is testimony that the house and premises "were in the names" of Annie Royall and Carson Webb's wife. But there is no evidence as to who owns the land where the still was found or as to whose land it adjoins.

And as to the tracks or footprints, Deputy Sheriff Hales testified: "I could not identify any of the tracks leading to the beer, the still, or any of the whiskey as being made by either of defendants." He further testified: "I cannot say that the liquor belonged to either of the defendants or to some other person in that vicinity. All I can tell is where I found it." There is other testimony to like effect.

The officers arrested Paul Webb and Royall while on the premises. They arrested Carson Webb later on the night of the day of their visit.

Paul Webb was drinking something that smelled like beer. "He was high." He did not say anything about whose whiskey it was the officers found. Royall denied knowing anything about it, or about the still. When arrested he seemed a little nervous. There was no smell of alcohol on him.

Verdict: Guilty as charged in said bill of indictment in manner and form as charged.

Judgment: As to Paul Webb: Confinement in the common jail for a period of six months, and assigned to work the roads under the supervision of the State Highway and Public Works Commission.

As to Carson Webb: Sentenced to jail for 12 months to work under direction of State Highway and Public Works Commission.

To the foregoing judgment the defendants Carson Webb and Paul Webb except and appeal to the Supreme Court, and assign error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*J. R. Barefoot for defendants, appellants.*

WINBORNE, J. The defendant Royall has not appealed from judgment on the verdict rendered against him. So this appeal is concerned with the defendants Paul Webb and Carson Webb who have appealed from the judgments on verdicts against them. It challenges the correctness of the action of the trial court in overruling their demurrers to the evidence. G.S. 15-173. When so challenged, the evidence is to be taken in the light most favorable to the State. So considered under applicable principles of law, we hold that the evidence shown in the record is not sufficient.

In this State it is unlawful for any person to possess any intoxicating liquor for the purpose of sale. G.S. 18-2. It is also unlawful to have or possess any "property" designed for the manufacture of intoxicating liquor intended for use, or which has been used in violating the prohibition laws of North Carolina. G.S. 18-4.

Defendants are charged with violating each of these statutes. Their pleas of not guilty put in issue every element of each of the offenses charged. *S. v. Meyers,* 190 N.C. 239, 129 S.E. 600; *S. v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472; *S. v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349.

Possession, within the meaning of the above statute, may be either actual or constructive. *S. v. Lee,* 164 N.C. 533, 80 S.E. 405; *S. v. Meyers, supra; S. v. Penry,* 220 N.C. 248, 17 S.E. 2d 4.

In the *Meyers case, supra,* it is stated: "If the liquor was within the power of the defendant in such a sense that he could and did command its use, the possession was as complete within the meaning of the statute as if his possession had been actual." The principle applies alike to possession of "property" designed for the manufacture of intoxicating liquor within the meaning of the statute. G.S. 18-4.

Concededly there is no evidence that either defendant had actual possession of the liquors or of the "property" found. But the State relies upon circumstantial evidence to support the conviction of appealing defendants on the theory that the circumstances testified to show that each of them had constructive possession of both the liquor and the "property."

While circumstantial evidence is a "recognized and accepted instrumentality in the ascertainment of truth," *S. v. Coffey,* 210 N.C. 561, 187 S.E. 754, when the State relies upon such evidence for a conviction, as in the present case, "the rule is that the facts established or advanced on the hearing must be of such a nature and so connected or related as to point unerringly to the defendant's guilt and to exclude any other reasonable hypothesis." *S. v. Stiwinter,* 211 N.C. 278, 189 S.E. 868; *S. v. Jones,* 215 N.C. 660, 2 S.E. 2d 867; *S. v. Harvey, supra; S. v. Coffey,*

228 N.C. 119, 44 S.E. 2d 886; *S. v. Minton,* 228 N.C. 518, 46 S.E. 2d 296; *S. v. Frye,* 229 N.C. 581, 50 S.E. 2d 895; *S. v. Fulk,* 232 N.C. 118, 59 S.E. 2d 617.

Moreover, the guilt of a person charged with the commission of a crime is not to be inferred merely from facts consistent with his guilt. They must be inconsistent with his innocence. *S. v. Massey,* 86 N.C. 658; *S. v. Harvey, supra.*

"Evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict and should not be left to a jury." *S. v. Vinson,* 63 N.C. 335; *S. v. Harvey, supra,* and cases cited. See also *S. v. Johnson,* 199 N.C. 429, 154 S.E. 730; *S. v. Boyd,* 223 N.C. 79, 25 S.E. 2d 456; *S. v. Murphy,* 225 N.C. 115, 33 S.E. 2d 588.

In the *Murphy case* defendant being charged with highway robbery, the evidence showed that others had equal opportunity with defendant for taking the money. It is there held that under such circumstances to find that any particular person took the money is to enter the realm of speculation, and that verdicts so found may not stand.

Just so in the case in hand, to hold that there is sufficient evidence to support a finding that either of the appealing defendants had constructive possession of either the liquor or the "property," as charged, is conjecture and speculation. They ought not to be convicted on such evidence. Hence their demurrers to the evidence should have been sustained.

Therefore, the judgments from which this appeal is taken are hereby Reversed.