STATE v. ESTEL McLAMB.

(Filed 19 March, 1952.)

**1. Searches and Seizures § 2—**

A warrant reciting that an officer of the law had sworn under oath that named persons illegally possessed intoxicating liquor at a specified locality, and commanding a search of the premises without affidavit, *is held* governed by G.S. 18-13 and not G.S. 15-27, and the warrant is a sufficient compliance with the apposite statute to render competent evidence discovered by an officer at the premises designated.

**2. Criminal Law § 28—**

Defendant's plea of not guilty puts in issue every element of the offense charged.

STATE *v.* McLAMB.

**3. Intoxicating Liquor § 5b—**

Possession of property designed and intended for the illegal manufacture of intoxicating liquor may be actual or constructive. "Designed" means fashioned according to a plan for that purpose. G.S. 18-4.

**4. Intoxicating Liquor § 9d—**

Evidence that officers, searching in defendant's house and barn, found jars, some with small amounts of whiskey in them, kegs and barrels, and a worm or condenser barrel, with testimony that it was of a type used in the manufacture of whiskey, *is held*, considered in the light most favorable to the State, sufficient to be submitted to the jury in a prosecution for possession of property designed and intended for the illegal manufacture of whiskey.

**5. Criminal Law § 50f—**

Defendant did not testify, but his wife, three other women, and several men testified in his behalf. *Held:* Argument of the solicitor to the effect that defendant was "hiding behind his wife's coattail" is tantamount to comment on defendant's failure to testify in his own behalf, and upon the court's overruling of objections thereto, must be held for prejudicial error. G.S. 8-54.

**6. Same—**

When defendant does not go upon the stand and does not put his character in evidence, the solicitor is not entitled to attack or make adverse comment on defendant's character in the argument to the jury.

**7. Intoxicating Liquor § 9a: Criminal Law § 56—**

A warrant charging defendant with the unlawful possession of property for the purpose of manufacturing illegal whiskey, instead of with possession of property designed and intended for that purpose, *held* not fatally defective, and motion in arrest of judgment is denied. G.S. 18-4.

APPEAL by defendant from *Grady, Emergency Judge,* at October Term, 1951, of JOHNSTON.

Criminal prosecution upon a warrant dated 4 May, 1951, based upon affidavit of same date charging that defendant "did unlawfully, wilfully and feloniously have in his possession for the purpose of manufacturing illegal whiskey one complete distillery outfit, about 500 gallons capacity, and 800 gallons of beer, and two complete distillery outfits of about 750 gallons each, and 750 gallons of beer, and 16 cases of fruit jars, 7 jugs (barrels and other materials for manufacture and sale of intoxicating liquor)"—the portion in parentheses being added by way of amendment allowed by the court—in the progress of the trial in Superior Court—as hereinafter shown.

The record shows that on 2 May, 1951, before E. C. Jones, a justice of the peace of Johnston County, one "E. O. Beasley, an officer charged with the execution of the law," said "under oath, that he is informed and believes that Estel McLamb and wife have in their possession intoxicating

liquors for the purpose of sale located in his dwelling, garage, filling station, automobiles, barns and out-houses, and premises . . . which is located in Bonner Township, Johnston County, N. C."

Thereupon E. C. Jones, J.P., signed a warrant which reads as follows:

"NORTH CAROLINA
 JOHNSTON COUNTY

   "To the Sheriff or any Lawful Officer—GREETING:

   "Whereas information has been furnished me by E. O. Beasley an officer charged with the execution of the law says under oath that Estel McLamb and wife has in their possession intoxicating liquors for the purpose of sale, located as above stated, you are authorized and commanded to enter upon said premises and make search of same. Seizing all intoxicating liquors, containers and other articles used in carrying on the illegal handling of intoxicating liquors. Herein fail not, and make due return of this warrant.

   "This 2nd day of May 1951.

                                              E. C. JONES, J.P."

At the bottom of which appear these entries:

"OFFICER'S RETURN:
        Received the 2nd day of May 1951.
        Executed the 3rd day of May, 1951.
                                    B. A. HENRY, Sheriff,
                                    By: G. IRA FORD, D. S."

Defendant Estel McLamb, being put upon trial upon the charges in the warrant, entered a plea of not guilty.

And upon the trial in Superior Court the State offered evidence tending to show that on 2 May, 1951, officers found two stills,—oil-burners,—in the woods, back of defendant's house,—the nearest one 450 steps from his house, and the other 150 steps beyond that, and surrounded as detailed by them; that on morning of 3 May officers destroyed the stills,—the circumstances and surroundings being detailed; and that on same morning, and under the search warrant, obtained as hereinabove stated, two of the officers searched the house, barn, and premises around the house of defendant where they found the following:

   (1) An oil tank of four hundred or five hundred gallon capacity, with a faucet on it, upon a scaffold at the wash house, 15 or 20 feet from the building;

   (2) Imprints of cans on the ground where oil had been drained from the tank;

   (3) In the house (a) five half-gallon jars with about half teaspoonful of whiskey in each, (b) seven or eight "brand new jars," and (c) upstairs,

STATE *v.* McLAMB.

a number of new oak kegs or buckets,—looked to be five or ten gallon capacity;

(4) Out at barn, (a) two half-gallon jars with strong odor of liquor in them, (b) one fifty-five gallon barrel with odor of beer in it, and shipstuff on the sides,—this was in feed barn downstairs, and (c) another barrel that was a worm or condenser barrel with holes in it—that is, an empty barrel that water runs in,—"they condense whiskey in it";

(5) Upstairs in the pack barn, 389 cases of new half-gallon fruit jars similar to the ones that were in the house,—the cases containing 12 jars each;

(6) Outside in the barn yard, (a) one-horse wagon that had strong odor of kerosene in the bottom of it, on burlap bags, and a cover "like they use in the Army for camouflage to put over something," and (b) fresh horse's tracks from the wagon to the oil tank and across the field and back around the path to barn; and

(7) Just across the road, at a pig pen, in front of the house, eleven empty fruit jar cartons and a barrel (the officer saying he did not know whose barn it was).

After giving above details, officer Ira Ford testified that the kegs and jars were new; that "Mrs. McLamb told us that the kegs and jars belonged to a wholesale merchant in Benson who used the place for storage," and again, "I did not indict Mr. or Mrs. McLamb for the liquor we found at the house or for anything else we found in the house. They are indicted only for the stills, beer, jugs and jars that we found in the woods." Thereupon, the solicitor moved to amend this warrant to include "barrels and other materials for the manufacture of whiskey." Objection overruled. Defendant excepted.

Officer Hinton, referring to the new kegs, testified that kegs of this kind are used for doubling kegs at stills; that in order to use these kegs for doubling barrels there has to be holes in the head; that he did not see any barrels there with holes drilled in them; that he saw the barrel that has been referred to as the one with mash on it; and that this was a 55-gallon barrel and there were holes in it. Then the witness was asked the question, "What use is made of a barrel of that type in the manufacture of whiskey?" Objection—overruled. Exception. The witness answered, "It is known as a worm barrel or condenser barrel."

And, under cross-examination, this witness continued, "found kegs with bails on them. They were oak stave bucket kegs and they were similar to buckets used in drawing water from wells and I also found some small oak kegs that did not have a bail. They were like the buckets except they did not have bails. They were all new and unused . . . The kegs I saw there could be used to put syrup, vinegar, grape juice, or any other liquid substance in . . . found 389 cases of new fruit jars . . . they are com-

monly used for fruit, and are in general use and sold by merchants throughout the country . . ."

Thereupon, defendant, reserving exception to denial of his motion for judgment as of nonsuit made when the State first rested its case, offered sixteen witnesses, among whom were his wife, his mother-in-law, and two other women. The evidence offered tends, in the main, to exculpate defendant of any connection with any of the articles found by the officers. Some of the witnesses testified to the general good character of defendant's wife. Defendant did not testify.

Defendant renewed his motion for judgment as of nonsuit at the close of all the evidence. Motion denied. Defendant excepted.

The record also shows the following: "The solicitor in arguing the case to the jury stated: 'Who did the defendant have up here as witnesses? His wife and a bunch of women, hiding behind his wife's coat-tail; Gentlemen of the Jury, you are not dealing with an honest man, you are dealing with a big-time bootlegger.' Defendant objects. Objection overruled. By the Court: 'That is a question for the jury.'" Defendant excepts. Exception 16.

Verdict: Defendant is not guilty as to the ownership and operation of the three stills described in the warrant: Guilty as to the possession of the materials and things found at the house for use in manufacturing liquor.

Judgment: Sentenced to the common jail of Johnston County, and assigned to work the roads of the State under the direction of the State Highway and Public Works Commission for a term of 18 months.

Defendant appeals therefrom to Supreme Court, and assigns error.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Charles G. Powell, Jr., Member of Staff, for the State.*

*Canaday & Canaday and J. Roscoe Barefoot for defendant, appellant.*

WINBORNE, J. Defendant assigns as error several rulings of the trial court upon which he formulates questions of law involved. We treat them *seriatim.*

1. Exceptions were taken to the admission of evidence secured by the officers under the search warrant. It is contended that the search warrant is defective for that the justice of the peace, who issued it, failed to comply with the requisites of G.S. 15-27, and amendments thereto, in that the procuring officer was not required to furnish sufficient facts to show probable cause for the issuance of such warrant. Be that as it may, it appears here that the provisions of G.S. 18-13 are applicable rather than G.S. 15-27. G.S. 18-13 provides that "upon . . . information furnished under oath by an officer charged with the execution of the law, before a justice of the peace, . . . that he has reason to believe that any person

has in his possession, at a place or places specified, liquor for the purpose of sale, a warrant shall be issued commanding the officer to whom it is directed to search the place or places described in such . . . information; and if such liquor be found in any such place or places, to seize and take into his custody all such liquor, and to seize and take into his custody all glasses, bottles, jugs, pumps, bars, or other equipment used in the business of selling intoxicating liquor which may be found at such place or places, and to keep the same subject to the order of the court . . ."

Testing the affidavit of the officer here in question by the provisions of this statute, G.S. 18-13, it appears that the matters contained in the affidavit are sufficient to justify the justice of the peace to issue the search warrant. Hence, in the admission of the evidence to which such exceptions relate, error is not made to appear.

2. Defendant next stresses for error the denial of his motions, aptly made, for judgment as in case of nonsuit. G.S. 15-173.

In passing upon this question, it is appropriate to note that in Article 1 of Chapter 18 of the General Statutes of North Carolina, pertaining to the regulation of intoxicating liquors, G.S. 18-4, it is provided that ". . . It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this article . . ." See *S. v. Jaynes,* 198 N.C. 728, 153 S.E. 410; *S. v. Webb,* 233 N.C. 382, 64 S.E. 2d 268.

Defendant is charged with violating this statute as it pertains to property designed for the manufacture of liquor, etc. His plea of not guilty puts in issue every element of the offense charged. *S. v. Meyers,* 190 N.C. 239, 129 S.E. 600; *S. v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472; *S. v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349; *S. v. Webb, supra.*

Possession, within the meaning of the above statute, may be either actual or constructive. *S. v. Lee,* 164 N.C. 533, 80 S.E. 405; *S. v. Meyers, supra; S. v. Penry,* 220 N.C. 248, 17 S.E. 2d 4; *S. v. Webb, supra.*

In the *Meyers case, supra,* it is stated: "If the liquor was within the power of the defendant in such a sense that he could and did command its use, the possession was as complete within the meaning of the statute as if his possession had been actual." And in the *Webb case, supra,* it is said that this principle applies alike to the possession of property designed for the manufacture of intoxicating liquor within the meaning of the statute. G.S. 18-4.

Moreover, in the *Jaynes case, supra,* this statute, then 3 C.S. 3411 (d), and under consideration, used the word "designated," and this Court held that this word was evidently intended for "designed," and might be so regarded, and, hence, the charge against the defendant was "having in his possession certain utensils designed and intended for use in the unlawful

manufacture of intoxicating liquor"—and that "the fact that they had not been completely assembled or arranged for the purpose would seem to make no difference under the language of the statute." Also it is noted that now the word "designated" as it then appeared in the statute has been deleted, and the word "designed" substituted in lieu of it.

The word "designed" is defined in Webster's New International Dictionary, as "done by design or purposely," that is, "opposed to accidental or inadvertent." Hence as used in the statute, G.S. 18-4, the phrase "property designed for the manufacture of liquor" means property "fashioned according to a plan" (Webster) for that purpose.

In the light of the provisions of the statute, as interpreted by these decisions of the Court, in passing upon the question now being considered, it must be borne in mind that the verdict of the jury is that defendant is not guilty as to the ownership and operation of the three stills described in the warrant, but that he is "guilty as to the possession of the materials and things found at the house for use in manufacturing liquors."

Thus in the light of the verdict the question now is whether the evidence, taken most favorably to the State, as is done in considering demurrer to the evidence, G.S. 15-173, is sufficient to take the case to the jury in respect of the charge to which the verdict of guilty relates. When so considered, the evidence appears to be sufficient, and it is held that it is sufficient to take the case to the jury—particularly the testimony relating to the barrel, referred to as the container barrel with holes in it. The testimony is that the officers found it "at the barn" on defendant's premises, and that a barrel of this type, in the manufacture of whiskey, is "known as a worm barrel or condenser barrel."

3. The next question is based on exceptions to the rulings of the trial court in respect to the remarks of the solicitor, hereinabove quoted, made in the course of his argument to the jury. The challenge so made is well founded.

The record and case on appeal show that defendant's wife and three other women, and several men testified in his behalf, but that he did not testify. Hence to say that he was "hiding behind his wife's coat tail" is tantamount to comment on his failure to testify, which is not permitted by the statute, G.S. 8-54. This statute declares that in the trial of all indictments, or other proceedings, against a person charged with the commission of a crime, the person so charged is, at his own request, but not otherwise, a competent witness, and that his failure to make such request shall not create any presumption against him. And the decisions of this Court have uniformly interpreted its meaning as denying the right of counsel to comment on the failure of a person so charged to testify. Among authoritative decisions are: *S. v. Humphrey,* 186 N.C. 533, 120

S.E. 85; *S. v. Tucker,* 190 N.C. 708, 130 S.E. 720; *S. v. Bovender,* 233 N.C. 683, 65 S.E. 2d 323, and cases cited.

Moreover, unless a defendant in a criminal prosecution testifies as a witness, thereby subjecting himself to impeachment, or produces evidence of his good character to repel the charge of crime, the State may not show his bad character for any purpose. See Stansbury on North Carolina Evidence—Section 104; also *S. v. Nance,* 195 N.C. 47, 141 S.E. 468; *S. v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606.

In the *Humphrey case, supra,* it appeared "that on the trial the solicitor was allowed, over defendant's objection, to make adverse comment on the fact that the defendant did not take the stand as a witness in his own behalf, and also as to the bad character of the defendant as a substantive fact tending to show his guilt, when the defendant had not himself put his character in evidence on the issue," the Court declared that both objections must be sustained under the statute, then C.S. 1799, now G.S. 8-54, and decisions appertaining to the subject.

And in the *Bovender case, supra, Chief Justice Devin,* then an *Associate Justice,* reviews the authorities. There the presiding judge declined to permit defendant's counsel to state to the jury that "the law says no man has to take the witness stand." The ruling of the court was sustained.

Moreover, in *S. v. Howley,* 220 N.C. 113, 16 S.E. 2d 705, it is held that it is the duty of the presiding judge to interfere when the remarks of counsel are not warranted by the evidence and are calculated to mislead or prejudice the jury.

In the present case, the court overruled the objections, and inadvertently ruled that it was "a question for the jury." True, the court, later, in charging the jury adverted to the right of defendant not to testify, but, in doing so, no reference is made to the remarks of the solicitor on which the above ruling was made.

Other matters to which exceptions were taken need not now be considered since for error pointed out there must be a new trial.

However, in this Court defendant moves in arrest of judgment for that the warrant, upon its face, fails to sufficiently charge a crime under G.S. 18-4, in that it fails to allege that defendant "possessed property designed for the manufacture of liquor intended for use in violating this article, or which has been so used." While the form of the charge as set out in the affidavit on which the warrant issued, and in the amendment thereto, is not here approved, this Court holds that it is not wholly insufficient. Hence the motion in arrest of judgment is denied.

But since the case goes back for a new trial, it may be deemed expedient to amend the warrant to more completely follow the statute G.S. 18-4.

Let there be a

New trial.