STATE OF NORTH CAROLINA v. JOSEPH KEITH REID

No. 527PA91

(Filed 10 September 1993)

1. **Criminal Law § 427 (NCI4th)— breaking or entering— defendant's failure to testify—prosecutor's comment**

The trial court erred in a prosecution for breaking or entering by overruling defendant's objection to the prosecution's closing comments about defendant's decision not to testify. The prosecution may comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State, but a prosecution's argument which clearly suggests that a defendant has failed to testify is error. It is of no relevance that the prosecution's reference to defendant's failure to testify parroted the pattern jury instructions. The trial court did not sustain defendant's objection to the prosecution's direct reference to defendant's failure to testify or give the jury a curative instruction. While the prosecution advised the jury not to hold defendant's failure to testify against him, this did not negate the trial court's duty to advise the jury of the prosecution's improper reference and offer a curative instruction. The error was prejudicial because the evidence against defendant in this case was not so overwhelming as to render any error on the part of the prosecution harmless beyond a reasonable doubt.

**Am Jur 2d, Trial §§ 237-243.**

**Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify. 14 ALR3d 723.**

**Violation of federal constitutional rule (Griffin v. California) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.**

2. **District Attorneys § 4 (NCI4th)— breaking and entering— defense attorney becoming assistant prosecutor—potential conflict of interest**

Where a breaking or entering conviction was reversed on other grounds, the trial court was cautioned on remand

STATE v. REID

[334 N.C. 551 (1993)]

to insure that there is no conflict of interest, as defined in *State v. Camacho,* 329 N.C. 589, on the part of the prosecution and·no participation in the case against defendant on the part of a former defense attorney now employed as an assistant prosecutor.

**Am Jur 2d, Prosecuting Attorneys §§ 19-32.**

Justice PARKER did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 of the decision·of the Court of Appeals, 104 N.C. App. 334, 410 S.E.2d 67 (1991), affirming a judgment entered by Owens, J., in Caldwell County Superior Court. Heard in the Supreme Court on 10 September 1992.

*Lacy H. Thornburg, Attorney General, by John H. Watters, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

EXUM, Chief Justice.

Defendant was indicted on 13 June 1988 for felonious breaking or entering in violation of N.C.G.S. § 14-54 (1986). He was convicted on 29 March 1990 and sentenced by the trial court to ten years' imprisonment. At trial defendant objected to a portion of the State's closing argument concerning defendant's failure to testify. The trial court overruled the objection and the Court of Appeals affirmed. We now reverse the Court of Appeals and grant defendant a new trial on the grounds that the State impermissibly commented on defendant's failure to testify.

The State's evidence tends to show the following:

On 1 February 1988 Charlotte McCorcle, pharmacist and assistant manager of Revco Drug Store at Pinewood Shopping Center in Granite Falls, received notice of an activated security alarm at the store. Upon entering the store with a sheriff's deputy, McCorcle noticed pharmaceutical drugs on the shelves in disarray. Both the floor and shelves were covered with muddy fingerprints and the meter box on the back of the building had been forcibly

removed. McCorcle noticed a hole in the back wall which had not been there when she locked the store on the previous evening.

While on patrol, Sergeant Paul Brittain and Officer Sandra Brown learned of the activated security alarm around 2:25 a.m. on 1 February. Upon approaching Pinewood Shopping Center, the officers observed a Ford parked approximately 100 yards from the shopping center facing away from the store. The officers noticed the lights were off in the Revco store and no other cars or persons were in the shopping center parking lot. The officers also noticed the missing meter box in the rear of the building.

After this initial investigation, the officers drove to the location of the parked Ford to obtain license tag numbers and discovered that the automobile was gone. Within two minutes, they observed that car travelling north on Highway 321 at a high speed with its headlights off. Brown observed a person later identified as defendant driving the car. The officers briefly pursued the automobile at speeds reaching between 70 and 90 miles per hour before defendant pulled over onto the side of the road. When defendant stopped, the officers noticed both the driver and passenger windows of the car were down and defendant was the only occupant of the car. Defendant told Brittain he was in the area of the shopping center because his car had run out of gas. When the officers asked why the car was running at that time, defendant said it had started unexpectedly. Defendant returned to the Revco store with the officers. Upon their arrival, another officer, Deputy David Seagle, observed defendant's hair was sprinkled with foam pellet insulation like that which leaked from the hole in the store's back wall. The same foam bead insulation was found on footwear impressions matching defendant's shoes and inside defendant's car. Subsequent police investigation uncovered other evidence linking defendant to the crime scene, including a sledgehammer found near the location where defendant stopped his car after the police pursuit.

Defendant was tried in the Caldwell County Superior Court on the charge of breaking or entering with intent to commit the felony of larceny. At defendant's trial Officer Keith Powers of the Winston-Salem Police Department testified that he was on duty in Winston-Salem at about 3:49 a.m. on 3 January 1988 when he responded to an activated security alarm at Pleasants Hardware in Winston-Salem. Powers discovered a hole that had been knocked

through the back wall of the building and found defendant inside the building.

Defendant presented no evidence at trial.

I.

[1] Defendant contends he is entitled to a new trial because the trial court erroneously overruled his objection to the prosecution's closing comments about defendant's decision not to testify. We agree.

During the prosecution's closing argument to the jury, the following transpired:

[THE STATE]: Now defendant hasn't taken the stand in this case —

[DEFENSE COUNSEL]: Objection to his remarks about that, Your Honor.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Exception.

[THE STATE]: The defendant hasn't taken the stand in this case. He has that right. You're not to hold that against him. But ladies and gentlemen, we have to look at the other evidence to look at intent in this case. . . .

On appeal, the Court of Appeals held that the statements made by the prosecution did not rise to the level of reference proscribed by the law of this State, but instead permissibly mirrored the North Carolina Pattern Jury Instructions regarding a criminal defendant's right not to testify. We reverse and hold that any direct reference to defendant's failure to testify is error and requires curative measures be taken by the trial court.

Article I, Section 23 of the North Carolina Constitution states that a defendant in a criminal prosecution cannot "be compelled to give self-incriminating evidence." N.C. Const. art. I, § 23. Similarly North Carolina General Statutes section 8-54 provides that no person charged with commission of a crime shall be compelled to testify or "answer any question tending to criminate himself." N.C.G.S. § 8-54 (1986).

A criminal defendant cannot be compelled to testify, and any reference by the State regarding his failure to do so violates an accused's constitutional right to remain silent. Griffin v.

California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed. 2d 106, *reh. denied*, 381 U.S. 957, 85 S.Ct. 1797, 14 L. Ed. 2d 730 (1965). Well before Griffin, N.C.G.S. 8-54 provided that the failure of a defendant to testify creates no presumption against him. We have interpreted this statute as prohibiting the prosecution, the defense, or the trial judge from commenting upon the defendant's failure to testify. See, e.g., State v. Bovender, 233 N.C. 683, 65 S.E.2d 323 (1951); State v. Humphrey, 186 N.C. 533, 120 S.E. 85 (1923).

*State v. Randolph*, 312 N.C. 198, 205-06, 321 S.E.2d 864, 869 (1984). "[T]he purpose behind the rule prohibiting comment on the failure to testify is that extended reference by the court or counsel concerning this would nullify the policy that failure to testify should not create a presumption against the defendant." *Id.* at 206, 321 S.E.2d at 869.

The prosecution may comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State. *State v. Mason*, 315 N.C. 724, 732, 340 S.E.2d 430, 436 (1986); *State v. Jordan*, 305 N.C. 274, 280, 287 S.E.2d 827, 831 (1982); *State v. Smith*, 290 N.C. 148, 168, 226 S.E.2d 10, 22, *cert. denied*, 429 U.S. 932, 50 L. Ed. 2d 301 (1976). However, a prosecution's argument which clearly suggests that a defendant has failed to testify is error. *State v. Monk*, 286 N.C. 509, 516, 212 S.E.2d 125, 131 (1975). That the prosecution's reference to defendant's failure to testify parroted the pattern jury instructions is of no relevance since N.C.G.S. § 8-54 prohibits the State "from making any reference to or comment on defendant's failure to testify." *State v. McCall*, 286 N.C. 472, 486, 212 S.E.2d 132, 141 (1975) (emphasis added). *See, e.g., State v. Roberts*, 243 N.C. 619, 621, 91 S.E.2d 589, 591 (1956) (statement of the prosecution in his argument that he had not said a word about defendant not testifying violated N.C.G.S. § 8-54); *State v. McLamb*, 235 N.C. 251, 257-58, 69 S.E.2d 537, 541 (1952) (argument by the State that defendant was "hiding behind his wife's coattail" was equivalent to comment on defendant's failure to testify on his own behalf, and upon the court's overruling of objections thereto, must be held prejudicial error); *State v. Monk*, 286 N.C. at 516, 212 S.E.2d at 131 (statement by prosecution that criminal record of defendant could not be shown to jury unless defendant took witness stand held to violate prohibition against comment upon failure of defendant to testify). *Cf. State v. Banks*, 322 N.C. 753, 370 S.E.2d

398 (1988) (The mere reading of [authoritative legal texts such as the Fifth Amendment], which, if they are material to the case, ought to be permitted, is not the same as 'comment or explanation,' which, in the case of a defendant's election not to testify, is prohibited.")

When the State directly comments on a defendant's failure to testify, the improper comment is not cured by subsequent inclusion in the jury charge of an instruction on a defendant's right not to testify. *Monk*, 286 N.C. at 516-17, 212 S.E.2d at 131-32; *State v. Billings*, 104 N.C. App. 362, 374, 409 S.E.2d 707, 714 (1991). Rather,

> this Court has held the error may be cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the accused to offer himself as a witness.

*McCall*, 286 N.C. at 487, 212 S.E.2d at 141. *Accord State v. Monk*, 286 N.C. at 516, 212 S.E.2d at 131; *State v. Lindsay*, 278 N.C. 293, 295, 179 S.E.2d 364, 365 (1971); *State v. Clayton*, 272 N.C. 377, 385, 158 S.E.2d 557, 562-63 (1968). We consistently have held that when the trial court fails to give a curative instruction to the jury concerning the prosecution's improper comment on a defendant's failure to testify, the prejudicial effect of such an uncured, improper reference mandates the granting of a new trial. *State v. McCall*, 286 N.C. at 487, 212 S.E.2d at 141; *State v. Monk*, 286 N.C. at 518, 212 S.E.2d at 132; *State v. Roberts*, 243 N.C. at 621, 91 S.E.2d at 591; *State v. McLamb*, 235 N.C. at 258, 69 S.E.2d at 542. In *McCall*, the prosecution stated the following in his closing argument:

> If a man was ever called upon in this world to deny something, he was called upon when they said, "You are charged with murder in the first degree of the Hices." He didn't say a word. Didn't say a word. He hasn't denied it up to this minute, according to what I've heard from the evidence.

*McCall*, 286 N.C. at 485, 212 S.E.2d at 140. The trial court sustained the defendant's objection to the above argument but failed to give a curative instruction to the jury. *Id.* at 485-86, 212 S.E.2d at 140. In ordering a new trial pursuant to § 8-54, this Court stated that although the trial judge did instruct the jury that the defendants had no burden and were not required to produce evidence,

testimony or witnesses, such an instruction was insufficiently curative because it was an incomplete statement of the pertinent rule of law in that it neglected to advise the jury that a defendant's failure to testify created no presumption against him. *Id.* at 487, 212 S.E.2d at 141. The Court concluded the trial court had the duty to give the jury proper instructions and failure of the trial court to remedy the statutory violation constituted prejudicial error. *Id.*

In the case at bar, the trial court did not sustain defendant's objection to the prosecution's direct reference to defendant's failure to testify. Nor did the trial court give the jury a curative instruction. While the prosecution advised the jury not to hold defendant's failure to testify against him, this did not negate the trial court's duty to advise the jury of the prosecution's improper reference and offer a curative instruction. By simply overruling defendant's objection to the prosecution's argument, the trial court impliedly sanctioned a clear violation of N.C.G.S. § 8-54. As in *McCall*, we find in the instant case that the trial court's failure to take the requisite curative measures at the time of the prosecution's improper comments or anytime thereafter constituted error violating defendant's constitutional and statutory rights.

Having concluded that failure to take such remedial measures was error, we now address whether such error was prejudicial, requiring a new trial. Comment on an accused's failure to testify does not call for an automatic reversal but requires the court to determine if the error is harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988); *United States v. Hasting,* 461 U.S. 499, 76 L. Ed. 2d 96 (1983); *State v. McCall,* 286 N.C. 472, 212 S.E.2d 132; *State v. Oates,* 65 N.C. App. 112, 308 S.E.2d 507 (1983). Assuming *arguendo* error exists, the State contends it is harmless beyond a reasonable doubt because of the overwhelming evidence against defendant in this case.

Notwithstanding the State's contentions, we do not find the evidence against defendant in this case so overwhelming as to render any error on the part of the prosecution harmless beyond a reasonable doubt. Defendant was charged with and convicted of felonious breaking or entering into another's building with the intent to commit larceny in violation of N.C.G.S. § 14-54. Such a conviction requires that the jury find beyond a reasonable doubt that at the time of the breaking or entering, defendant intended to commit larceny. *State v. Brown,* 266 N.C. 55, 61, 145 S.E.2d

297, 302 (1965), *overruled on other grounds, State v. Jones*, 275 N.C. 432, 168 S.E.2d 380 (1969); *State v. Litchford*, 78 N.C. App. 722, 724, 338 S.E.2d 575, 577 (1986). Pursuant to N.C.G.S. § 14-72, larceny requires proof beyond a reasonable doubt that the defendant "(1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Perry*, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982). In the instant case, there was no direct evidence that any property had been removed from inside the store. Therefore, as the prosecution pointed out in closing argument and the trial court instructed in its jury charge, the jury was required to infer an intent to commit larceny from circumstantial evidence. Because we cannot conclude that the prosecution's erroneous reference to defendant's failure to testify had no bearing on the jury's inference of the requisite intent for the felony of larceny, we cannot hold the trial court's error was harmless beyond a reasonable doubt. Had improper reference to defendant's failure to testify been properly cured and the jury failed to infer an intent to commit larceny, defendant could have been convicted of the lesser offense of nonfelonious, or misdemeanor, breaking or entering. For these reasons, we conclude that the error here was not harmless beyond a reasonable doubt and that defendant is entitled to a new trial.

The State contends that resolution of this case should be controlled by our decision in *Randolph*. We find *Randolph* to be distinguishable. In *Randolph*, the defendants were tried on indictments for first-degree rape, first-degree sexual offense, first-degree kidnapping, armed robbery and felonious larceny. *Randolph*, 312 N.C. at 199, 321 S.E.2d at 865. Neither defendant presented evidence at trial. *Id.* at 202, 321 S.E.2d at 867. During his closing argument, the prosecution stated:

The Judge is going to instruct you in the meaning of flight and what it signifies about a person's state of mind. It suggests, ladies and gentlemen, a guilty state of mind. This is why people run and hide, because they're guilty.

Sanders and Randolph have not said much more about these affairs, but that was enough. They have spoken elegantly through their flight, or luckily through their attempted flight from the scene.

*Id.* at 205, 321 S.E.2d at 869. On direct appeal, this Court held that "[i]f the statement here was a reference to the defendants' failure to testify, it was not an 'extended reference.' " *Id.* at 206, 321 S.E.2d at 869. We stated that the thrust of the prosecution's statement concerned the issue of flight and the accompanying state of mind, and reference to the defendants' failure to testify was too indirect and brief for the jury to infer guilt from the defendants' silence. *Id.*

Unlike *Randolph*, the statement made by the prosecution in the present case was not indirect. Rather, it was a specific reference to defendant's failure to take the stand coupled with a request to the jury not to consider it against defendant. As we consistently have held, any reference by the State to a defendant's failure to testify is prohibited.

Another distinction between *Randolph* and the case at bar is that the defendants in *Randolph* made no objection and also decided against requesting a curative instruction when it was suggested by the trial court. In the present case, defendant specifically objected to the prosecution's reference to defendant's failure to testify. In overruling the objection and declining to offer a curative instruction, the trial court allowed the jury to determine what weight should be given to defendant's silence. Under these circumstances, it was the responsibility of the trial court to properly instruct the jury. *See State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 346 (1967); *State v. Smith*, 279 N.C. 163, 166, 181 S.E.2d 458, 460 (1971), and cases cited therein. Failure to do so was prejudicial error and was not harmless beyond a reasonable doubt.

II.

[2] In an additional assignment of error defendant contends he is entitled to a new trial because of the prosecution's conflict of interest and defendant's former attorney's participation in his prosecution. Because we grant a new trial on other grounds, we do not address this issue definitively. We address it merely for the purpose of giving guidance to the trial court on remand.

In February 1988 defendant retained Mr. Jason R. Parker to represent him in this criminal action. Mr. Parker represented defendant for approximately six months until 9 August 1988 when he filed a motion to withdraw on the grounds that he had obtained a job in the office of the District Attorney prosecuting this case.

Mr. Parker's motion was allowed and he subsequently became an Assistant District Attorney in the Twenty-Fifth Prosecutorial District Attorney's Office. On 21 December 1988 Twenty-Fifth Prosecutorial District Attorney Robert Thomas informed the Attorney General by letter that "a potential conflict of interest problem" existed in defendant's case and sought advice as to whether his office should continue with the prosecution. On 22 December 1988 James J. Coman of the Special Prosecution Division of the Attorney General's Office responded with the following:

> In light of the conflict existing because of [Mr. Parker's] prior representation of [defendant], we will accept responsibility for the prosecution of these matters with the following under-standing: . . . That we will be provided copies of all prosecution summaries and/or police reports now in the possession of your office or the appropriate law enforcement agencies. I . . . have decided to assign [defendant's case] to Assistant Attorney General John Watters.

Mr. Watters subsequently subpoenaed Mr. Parker to appear as a witness for the State at a pretrial hearing on defendant's motion to dismiss under the then existing Speedy Trial Act. N.C.G.S. ch. 15A, subch. VII, art. 35 (repealed 1983). At this hearing Mr. Parker was not asked about, nor did he testify regarding, any confidences obtained from, or substantive communications with, defendant. He testified only to the date on which he filed a request for voluntary discovery; the date on which he thereafter examined, at the prosecution's invitation, the prosecution's files concerning defendant; the file numbers involved in his examination; and that he thereafter telephoned his client to set up an appointment for the next day. On cross-examination Mr. Parker testified to certain conversations he had with the District Attorney's office concerning a convenient time for reviewing the prosecution's files.

Rule 5.1(D) of the Rules of Professional Conduct states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same . . . matter in which that person's interests are materially adverse to the in-terests of the former client . . . ." *Rules of Professional Conduct* Canon V, Rule 5.1(D) (1985). Rule 9.1(C)(1) states: "[A] lawyer serving as a public officer shall not . . . [p]articipate in a matter in which the lawyer participated . . . while in private practice . . . ." *Rules of Professional Conduct* Canon V, Rule 9(C)(1) (1985). The comment

to Rule 9.1(C)(1) provides: "Paragraph (C) does not disqualify other lawyers in the agency with which the lawyer in question has become associated." The American Bar Association's Formal Opinion 342, 62 A.B.A.J. 517 (1976), provides that where an attorney who formerly represented a defendant being prosecuted joins the prosecution's office, it is not necessary to disqualify the entire governmental office; however, "the individual lawyer should be screened from any direct or indirect participation in the matter, and discussion with his colleagues concerning the [prosecution]. . . ." *See also* *State v. Camacho*, 329 N.C. 589, 406 S.E.2d 868 (1991).

In *Camacho*, we held a prosecutor may be disqualified upon a showing of actual conflict of interests. An actual conflict of interests exists where the prosecutor "previously represented the defendant with regard to the charges to be prosecuted and" obtained as a result confidential information detrimental to defendant at trial. *Id.* at 601, 406 S.E.2d at 875. Where a trial court finds an actual conflict of interests, "the trial court may disqualify the prosecutor having the conflict from participating in the prosecution of a defendant's case and order the prosecutor not to reveal information which might be harmful to the defendant." *Id.* at 602, 406 S.E.2d at 876.

We caution the trial court on remand for a new trial to insure that there is no conflict of interest, as defined in *Camacho*, on the part of the prosecution and no participation in the case against defendant on the part of Mr. Parker.

The result is that the decision of the Court of Appeals finding no error in the prosecutor's comment on defendant's failure to testify is reversed and the case is remanded for a new trial.

REVERSED and REMANDED.

Justice Parker did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

The context of incident that the majority finds to be reversible error was as follows. During his closing argument, the prosecutor discussed the intent element of larceny, and the following exchange occurred:

[THE STATE]: And the final element of the crime of felonious breaking or entering is that the breaking or entering was done with the intent to commit larceny. Now ladies and gentlemen, intent, as Judge Owens is going to tell you in a little while, is a process of the mind. It's right up here. It's not susceptible to direct proof. What must come from circumstantial evidence and things that can be inferred.

Now the defendant hasn't taken the stand in this case—

MR. BURKHEIMER: Objection to his remarks about that, Your Honor.

THE COURT: Overruled.

MR. BURKHEIMER: Exception.

[THE STATE]: The defendant hasn't taken the stand in this case. He has that right. You're not to hold that against him. But ladies and gentlemen, we have to look at the other evidence to look at intent in this case. What do we have? Well, we've got a hole in the back wall. Why would anybody do that? Just for the heck of it? Is this vandalism? The State contends that it's not. We've got an entry into the building. Just wanted to go in there, do something, take a look around? State contends that's preposterous. But the most damning of all evidence is that set of shoe tracks going right to the drug counter.

Assuming, *arguendo*, that the prosecutor's reference, to the effect that defendant had not taken the stand was error, I believe that the error was harmless beyond a reasonable doubt. I am unpersuaded by the majority's contention that the evidence against defendant was insufficient to justify such a finding.

The uncontradicted evidence of defendant's guilt of the crime charged was overwhelming. A man meeting the general description of defendant was noticed near the back door of the Revco where the break-in took place just days before the crime. On 1 February 1988, Charlotte McCorcle, pharmacist assistant manager at Revco, was called to the store by an activated alarm. Upon entering the store with a sheriff's deputy, she noticed that drugs on the shelves were in disarray, there were muddy shoe prints and fingerprints on the floor and the shelves, and the meter box at the back of the store had been pulled off the wall and was missing. There

was also a hole in the back wall that had not been there when Ms. McCorcle had closed and locked the store the night before.

The activated alarm also notified patrol officers Sergeant Paul Brittain and Officer Sandra Brown of a possible break-in at Revco. The officers received the call at 2:25 a.m. on 1 February 1988 and proceeded north on Highway 321 toward Pinewood Shopping Center. As they approached the shopping center, the only automobile they observed was a parked Ford facing in the opposite direction. This automobile was located approximately one hundred yards from the shopping center through the woods. As the officers approached the parking lot of the shopping center, they observed no other cars or persons. They noticed that the lights were out at Revco. They drove to the back of the building and noticed that the meter box was missing from the back of Revco. They drove to where the Ford had been parked to try to obtain its license number and discovered that the car was gone. Less than two minutes later, they saw the car on Highway 321, traveling in a northerly direction. Officer Brown observed a person later identified as defendant driving the car.

Officer Brown testified that the vehicle was traveling at an accelerated speed without its headlights on. Sergeant Brittain activated his siren and blue lights and chased defendant's car, reaching speeds between seventy and ninety miles per hour. Defendant did not stop immediately but did finally pull over and slowly moved down the right side of the road. The only occupant of the car was defendant. Both passenger and driver windows were rolled down on a cold, wet night.

Defendant told Sergeant Brittain that he had run out of gas, although he gave no explanation for the car starting after the officers first observed him. Sergeant Brittain also observed cloth gloves on the back floorboard of the car. Defendant voluntarily returned to Revco with the officers.

When defendant returned to Revco, another officer (Officer Seagle) observed white foam pellet insulation (which was consistent with the insulation in the hole in Revco's back wall) in defendant's hair. Additional evidence collected at the scene of the crime included, *inter alia*, footwear impressions containing foam bead insulation which matched defendant's footwear, foam bead insulation from defendant's clothes which matched the insulation at Revco, foam bead insulation from the floorboard of defendant's car and brown

cotton gloves found in the car, and fibers taken from the point of entry which matched the fibers in the toboggan defendant was wearing that night. The officers located a sledgehammer by the side of the road where defendant had slowed down before he stopped his car. The sledgehammer was dry, although it was a cold, wet night. The missing meter box was later found in a dumpster.

At trial, Officer Keith Powers of the Winston-Salem Police Department testified to a separate incident that occurred on 3 January 1989 when he responded to an activated alarm call at Pleasant's Hardware in Winston-Salem at approximately 3:49 a.m. When he checked the store for signs of a break-in, he noted a hole knocked in the back of the building and then discovered defendant inside the building. The evidence indicated that this hole was consistent in size and shape to the hole in the back of Revco found during the break-in of February 1988.

Unlike the majority, I conclude that the prosecutor's reference to defendant's failure to take the stand had no bearing on the jury's inference that defendant entered the store with the intent to commit larceny. I find the evidence adequate to support a determination that the error in question was harmless beyond a reasonable doubt.