STATE v. RICHARD D. BRYANT.

(Filed 23 September, 1959.)

**1. Automobiles § 59—**

    Evidence tending to show that defendant was traveling approximately 70 m.p.h. on his left side of the highway, partly on the shoulders of the road, and ran into the right side of a vehicle approaching from the opposite direction on its right side of the highway, resulting in the deaths of two occupants of that car, *is held* amply sufficient to be submitted to the jury and to sustain a verdict of guilty of manslaughter.

**2. Automobiles § 38—**

    It is competent for witnesses a quarter of a mile from the scene of the accident to testify that defendant's vehicle when it passed the witnesses was traveling approximately 70 m.p.h. and that the vehicle did not seem to slacken in speed before the collision, the witnesses having had an opportunity to observe the speed of the car from the time it passed until the collision.

  HIGGINS, J., not sitting.

APPEAL by defendant from *Bundy, J.,* March 16 Criminal Term 1959 of MARTIN.

This is a criminal action in which the defendant, Richard D. Bryant, was tried on two bills of indictment, one charging the felonious killing on 25 October 1958 of Martha Jane Winchester and the other charging the felonious killing on the same date of Mary Carolyn Harris. By consent the two cases were consolidated for trial.

J. B. McKeel testified that he was enroute in his 1958 Chevrolet 4-door sedan from Hassel, North Carolina, toward the Williamston-Scotland Neck highway to Spring Green, on 25 October 1958; that he was driving his car 35 miles an hour on the right-hand side of the road. That he met a car upon his side of the road which appeared to be "riding about half in and half out of the ditch that was" on his (McKeel's) right-hand side; that after he saw the car was over on his side of the road, he started to cut his wheels to go to the left-hand side of the road; that at that time everything went black and he was unconscious for about two days; that Mary Carolyn Harris and

Martha Jane Winchester were in the front seat with him at the time of the collision; that when he next saw them three days later, they were dead.

Delmas Williams and his father, Thurman Williams, testified that they were in front of the house of Delmas Williams, about a quarter of a mile from where the defendant's car collided with the automobile being driven by J. B. McKeel; that the McKeel vehicle was coming toward them while the car of Thurman Williams was parked on the left side of the highway, completely off of the hard surface; that it was night; that defendant's automobile went by, according to Delmas Williams, at about 70 to 80 miles per hour, and about 70 miles per hour according to his father. That they had an unobstructed view of the defendant's car from the time it passed until it collided with the McKeel car; that the defendant's automobile swerved from right to left before it collided with the McKeel vehicle. Thurman Williams testified that he observed the defendant's car from the time it passed him until the collision, and in his opinion the defendant's car was being operated at 70 miles per hour just before the collision. Delmas Williams testified that he observed the defendant's car when it passed his house and continuously thereafter "until it had the accident. The car did not show any signs of slowing down from the time it passed me until the accident."

The testimony of the Highway patrolman is to the effect that the defendant said he was driving his car at the time of the collision about 50 to 55 miles per hour; "that the hood of his car flew up and he was looking out the window and lost control of it * * * he did not know how long he drove that way."

The evidence further tends to show that the defendant's car ran a distance of 18 yards on the left shoulder of the highway before it ran into the right side of the McKeel vehicle. The evidence also tends to show that the McKeel car was still on its right of the center lane of the highway when it was struck by the defendant's car.

The parties stipulated that "Mary Carolyn Harris and Martha Jane Winchester died as a result of injuries sustained in the accident in question." Defendant offered no evidence and rested at the close of the State's evidence after moving for judgment as of nonsuit, which motion was overruled.

The jury returned a verdict of guilty of involuntary manslaughter. From the judgment imposed, the defendant appeals, assigning error.

*Attorney General Seawell, Asst. Attorney General McGalliard, for the State.*
*Taylor & Mitchell for defendant.*

DENNY, J. The defendant's first assignment of error is directed to the refusal of the court below to sustain his motion for judgment as of nonsuit. There is ample evidence revealed on this record to take the case to the jury and to support the verdict rendered. This assignment of error is without merit.

The defendant also assigns as error the admission of the evidence of Thurman Williams relating to the defendant's speed, which was to the effect that in his opinion the defendant was operating his car at approximately 70 miles per hour immediately prior to the accident involved in this action.

In light of the evidence with respect to the opportunity the witness had to observe the speed of the defendant's car and to observe it from the time it passed him until the collision, the evidence was admissible. *S. v. Leonard,* 195 N. C. 242, 141 S. E. 736; *S. v. Peterson,* 212 N.C. 758, 194 S.E. 498; *S. v. Kelly,* 227 N.C. 62, 40 S.E. 2d 454.

In the case of *Lookabill v. Regan,* 247 N.C. 199, 100 S.E. 2d 521, *Winborne, C. J.,* said: "It is a general rule of law, adopted in this State, that any person of ordinary intelligence, who has had an opportunity for observation, is competent to testify as to the rate of speed of a moving object, such as an automobile." Citations omitted.

It is pointed out in *S. v. Peterson, supra,* that the case of *S. v. Leonard, supra,* is direct authority for the admission of evidence tending to show the speed of a motor vehicle a quarter of a mile from the scene of a wreck in which such motor vehicle is involved. This assignment of error is overruled.

The remaining exceptions and assignments of error, directed to the charge, have been carefully examined and they present no prejudicial error. The verdict and judgment will be upheld.

No Error.

HIGGINS, J., not sitting.