## STATE OF NORTH CAROLINA v. ESTORIA CLAYTON.

(Filed 12 January, 1968.)

**1. Criminal Law § 104—**

On motion to nonsuit, the evidence must be considered in the light most favorable to the State.

**2. Automobiles § 113— Evidence of culpable negligence in striking boy held for jury.**

The evidence tended to show that seven children left school and began walking home in an easterly direction on the shoulder of a highway, that a car driven by defendant was observed approaching from an easterly direction at a speed of 60 to 70 miles per hour, that the car ran off the pavement, struck one of the children and continued without stopping, that the defendant was found 15 minutes later beside his wrecked car and was, in the opinion of one witness, under the influence of alcohol, and that defendant admitted to a patrolman that he saw the children. The evidence further showed that the road from the school ran downgrade in an easterly direction for 150 to 200 feet, that signs at the bottom of the grade warned westbound motorists of the school and of an approaching speed limit of 35 miles per hour, that the body of deceased was found on the shoulder of the road and some 50 feet east of the signs, and that for a considerable distance east of the point of impact the road was straight and unobstructed. *Held:* The evidence is sufficient to be submitted to the jury on the issue of defendant's culpable negligence in causing the death of the child.

**3. Automobiles § 112—**

It is competent in a homicide prosecution for a person of ordinary intelligence to testify as to his opinion of the speed of a vehicle when he has had a reasonable opportunity to observe the vehicle in motion.

**4. Same—**

Where it affirmatively appears that a witness had sufficient opportunity to observe a moving vehicle, discrepancies in his testimony appearing on cross-examination, together with his statement that he was "guessing at all those speeds and distances," do not render incompetent his opinion as to the speed of the vehicle, but go instead to the credibility and the weight of his testimony.

**5. Same—**

In this homicide prosecution arising out of the operation of a motor vehicle, there was no error in admitting the testimony of a witness that the defendant was under the influence of intoxicants when the evidence supports a reasonable inference that the witness saw the defendant some 15 minutes or less after the homicide.

**6. Criminal Law § 116—**

    Any inference in the solicitor's argument in regard to defendant's failure to testify in his own behalf *held* cured by the court's immediate instruction upon objection that defendant had the right not to testify and that his failure to do so should not prejudice him, and by the court's instruction to the same effect in the charge to the jury.

**7. Automobiles § 114;    Criminal Law § 118—**

    In a prosecution for manslaughter arising out of the operation of an automobile, the defendant having offered no. evidence, it is not error for the court to instruct the jury that the defendant contended that he was not the driver of the automobile, since defendant's plea of not guilty puts into issue every element of the offense· charged.

**8. Criminal Law § 118—**

    An error in stating the contentions of ·a· defendant ordinarily must be called to the court's attention in apt time to afford opportunity for correction, in order that an exception thereto ·be.·considered on appeal.

**9. Criminal Law § 98—**

    A motion to sequester witnesses is addressed · to the discretion of the trial court, and the court's refusal of a request for sequestration will *not* be disturbed in the absence of a showing of abuse.

APPEAL by defendant from *Bickett,·J:*, February 1967 Criminal Session of PERSON.

Defendant was tried upon a bill of indictment (returned at the February 1966 Session) which charged him with the felonious killing of Joseph Richard Seamons. Defendant, represented by his privately employed counsel, Blackwell M. Brogden, Esquire, pled not guilty. He was convicted of involuntary manslaughter and appeals from a sentence of not less than five nor more than seven years in the State's prison.

*T. W. Bruton, Attorney General; William.. W. Melvin, Assistant Attorney General; and T. Buie Costen, Staff Attorney, for the State.*
    *Blackwell M. Brogden for defendant.*

SHARP, J. Defendant brings forward six assignments of error. We consider first whether the judge erred in overruling the motions for nonsuit (assignment No. 5). The parties stipulated that Joseph Richard Seamons (Seamons), a school boy, died as a result of injuries received when he was struck by an automobile on 21 January 1966. Defendant offered no evidence. That offered by the State tended to show the following facts:

Allensville School is situated on the south side of Rural Paved Road 1520, which runs east and west. East of the eastern end of the circular drive around the school the road is straight for over a

quarter of a mile. It is a 2-lane, 20-foot paved highway, with dirt and grass shoulders 7 feet wide. From the school, the road runs downgrade to the east for 150-200 feet. At the bottom of this grade, on the north shoulder, dual signs warn the westbound motorist that he is approaching a school and a speed zone of 35 MPH. East of the school sign, the road is upgrade and straight for a considerable distance.

On 21 January 1966 the weather was clear; visibility, good; the road, dry. The Allensville School "let out" at 3:30 p.m. About five minutes thereafter, Seamons and six other children crossed the road and started walking in an easterly direction on the shoulder with Seamons, the third in line. Three loaded school buses were also proceeding east in the immediate vicinity. A blue and white Ford, operated in a westerly direction by a colored man wearing a hat, came down the hill "speeding." Sherman Monroe Stewart (aged 18), the driver of the first school bus (No. 99), met the Ford about halfway up the hill. He observed its approach for 200-300 feet, and, in his opinion, it was traveling at a speed of 60-70 MPH. After the Ford passed school bus No. 99, it twice ran off the pavement. The second time, it hit Seamons on the north shoulder of the road and continued on its way without stopping.

When the investigating patrolman, Joe Wright, arrived at the scene at approximately 3:50 p.m., he found Seamons' body lying on the north shoulder, 13 feet from the edge of the pavement and about 50 feet east of the school sign. From that spot, one could see to the east a quarter of a mile. The speed limit there was 55 MPH; west of the school sign, within the school zone, it was 35 MPH.

After the Ford passed the school sign, Mrs. Pauline F. Gentry, who had just entered the highway from the eastern end of the school drive and headed east, observed approaching from the east a two-tone car driven by a colored person wearing a hat. It was "waving toward the line in the middle of the road" and ran her off onto the shoulder. She observed this automobile for 100-150 feet. In her opinion, its speed was "at least 40 or 45 miles or more." After it went by, she started up the hill. As she passed the group of children on the shoulder, she realized that something had happened and backed to the spot where Seamons was lying on the bank. She dispatched two boys to the school to telephone for help and left her son, Larry Wayne Gentry, and another boy, who had been in her car, "on guard" with instructions to let nothing be moved. Larry observed glass and the dead boy's thumb in the road.

At approximately 3:50 p.m., Patrolman Joe Wright arrived at the scene, which he had approached from the west. En route, at Weaver's Store, which is nine-tenths of a mile from the spot where

he found Seamon's body, he came upon defendant standing by a 1959 blue and white Ford. This vehicle had been wrecked in the right ditch of an unpaved road which comes across from the school. Defendant told Wright that the wrecked car belonged to him and that he had been driving it. Defendant appeared to the patrolman to be in shock; "something was wrong with him at the time." He had the odor of alcohol on his breath. The right front and rear of the Ford were damaged. There was a slight dent in the top of the right fender, and all the glass was broken from the right headlight except a small fragment, which Wright removed. He placed it in an envelope, which he sealed and labeled. When he arrived at the scene of the accident, he found fragments of glass on both the pavement and the shoulder. These he placed in another envelope which he also sealed and labeled. Thereafter he delivered both envelopes to the SBI Laboratory. In the opinion of the analyst who examined the fragments, the particles in the two envelopes were at one time a part of the same sealed-beam headlight.

At Patrolman Wright's request, Larry Wayne Gentry accompanied him to Weaver's Store, where Gentry identified the 1959 Ford in the ditch as the vehicle he had seen when he and his mother entered the road from the Allensville School driveway. He also identified defendant as the driver of the vehicle. Upon this identification, the investigating officers then arrested defendant.

Shortly after Seamons was struck by the passing car, Kenneth Crow, a foreman en route to his work at Crown Aluminum Industries, passed the spot where the body lay. In order to call an ambulance he went immediately to Weaver's Store, where he saw a lot of smoke and a blue and white Ford in the ditch across the road from the store. He also saw defendant, who worked under him at Crown Aluminum, come from around the front of the car. Defendant's eyes looked glassy, and his speech was slurred when he replied to Crow's questions. In Crow's opinion, defendant had been drinking and was under the influence of alcohol.

On 22 January 1966, after having warned defendant of his constitutional rights, SBI agent Satterfield interviewed him. At that time, defendant made a statement, which is summarized as follows: On the preceding day, defendant had been cutting and hauling pulpwood. Just before lunch he had consumed two beers. Thereafter, about 3:00 p.m., he started to his work at Crown Aluminum. As he approached the Allensville School, he saw three or four boys on the road 150 feet away. He slowed down to 30-35 MPH and, seeing no other traffic on the highway, he drove a little to his left of the center. His first sight of Seamons was a fleeting glance as the boy

bounced off the right front fender of his car. Realizing that he, a Negro, had struck a white boy in a white community, he became frightened and sped away. Soon thereafter, one of his tires blew out, and his car went into the ditch, where the patrolman found it.

The fundamental rule is that on a motion for nonsuit the State's evidence must be considered in the light most favorable to it. Applying this rule, the foregoing resume clearly demonstrates the sufficiency of the State's evidence to withstand the motion. The evidence of defendant's excessive and unlawful speed, his failure to keep a proper lookout and to bring his car under control as he approached a school zone and saw children walking on the shoulder of the highway, the fact that he struck the boy who was off the pavement, and his flight from the scene of the accident, was ample to establish defendant's culpable negligence as the proximate cause of Seamons' death. *State v. Colson,* 262 N.C. 506, 138 S.E. 2d 121; *State v. Huggins,* 214 N.C. 568, 199 S.E. 926; *State v. Cope,* 204 N.C. 28, 167 S.E. 456; 1 Strong, N. C. Index 2d, Automobiles § 113 (1967); 7 Am. Jur. 2d, Automobiles and Highway Traffic § 337 (1963); Annot., Automobile — Violation of Law — Homicide, 99 A.L.R. 756, 788 (1935).

Two of defendant's assignments relate to the admission of evidence. The maximum legal speed at the point where the automobile struck Seamon was 55 MPH, although 50 feet farther it was 35 MPH. The only specific evidence that defendant's speed was in excess of 55 MPH before he passed the school sign came from Sherman Monroe Stewart, the driver of school bus No. 99, who testified as follows:

"As I leave the school I go down the hill, go down the hill into the bottom where the sign is and proceed on up the hill aways. It is a very long hill, I would say about five hundred (500) feet to the bottom. . . . I was traveling on up this road and about half way up the hill I saw a car coming down. It was bearing on my side of the road. I believe it was a blue and white car. As I proceeded on up the hill about halfway up the hill the car was coming on down and the car was about fifty (50) feet before it got to me, it cut back on its side of the road. I had the opportunity to observe the car as it approached me for about two or three hundred feet." Stewart then stated that he had an opinion satisfactory to himself as to the speed of the automobile. Over defendant's objection, he testified: "I would say between sixty to seventy miles an hour." He also said that he passed children walking on the north shoulder. They were approaching the school sign in the bottom as he went by.

On cross-examination, Stewart became confused as to the num-

ber of feet he had traveled from the school at the time he first saw the approaching automobile, and he said "It is true that I am guessing at all these speeds and distances." At this point, defendant moved to strike all of Stewart's testimony on the ground that his opinion of the Ford's speed was a mere guess and that the discrepancies in his estimates of distance rendered his estimate of speed without probative value. Defendant assigns the denial of this motion as error.

A person of ordinary intelligence who has had a reasonable opportunity to observe a vehicle in motion may give his estimate as to the speed at which it was moving. *Hicks v. Love* and *Bruton v. Love*, 201 N.C. 773, 161 S.E. 394; 1 Strong, N. C. Index, Automobiles § 38 (1957); Stansbury, N. C. Evidence § 131 (2d Ed. 1963); 8 Am. Jur. 2d Automobiles and Highway Traffic § 985 (1963). On the other hand, a witness will not be permitted to express a mere guess, as distinguished from an opinion. "Absolute accuracy, however, is not required to make a witness competent to testify as to speed." 32 C.J.S. Evidence § 546 (53) p. 239 (1964).

The mere fact a witness states that he is guessing at distances or speeds does not *per se* render his testimony incompetent. In *Finnerty v. Darby*, 391 Pa. 300, 138 A. 2d 117, the witness was asked for his "best estimate" of the speed of an automobile prior to the accident. His reply was, "Strictly as a guess I would say between 40 and 50 miles an hour." In holding this testimony admissible, the Pennsylvania court stated:

"From this appellant argues that the witness' entire testimony was nothing but guesswork or mere conjecture. In the first place, the word 'guess' does not necessarily mean mere conjecture, but may connote judgment. If a person is asked to estimate the number of people in a crowd, he may say 'I guess' a certain number, or he may say 'I judge' a certain number. By either term he is expressing an opinion based on observation. In the instant case, the witness repeatedly made clear that he could not give the exact speed of the car and was giving his best opinion of its approximate speed." *Id.* at 310, 138 A. 2d at 122. *Accord, Tews v. Hamrick*, 148 Neb. 59, 26 N.W. 2d 499.

Similarly in *Smith v. Commonwealth*, 282 S.W. 2d 840, 842 (Ky. CA 1955), a manslaughter prosecution, it is said:

"The term 'guess' is not regarded as being a mere conjecture or speculation but as a colloquial way of expressing an estimate or opinion. It is a word frequently used where a witness is called upon to make estimates of speed or distance or size or time. Like the

words 'suppose' or 'think', it is commonly used as meaning the expression of a judgment with the implication of uncertainty."

In *State v. Phelps,* 242 N.C. 540, 89 S.E. 2d 132, the testimony of one of the witnesses was that, in his opinion, the defendant's car was traveling 75 or 80 miles an hour. On cross-examination, he said he was guessing at the speed. With reference to this evidence, Parker, J. (now C.J.), said: "The statement of Eason on direct examination that the speed of the car, in his opinion, was 75 to 80 miles per hour, and his statement on cross-examination that he was guessing at the speed, is a matter of credibility." *Id.* at 545, 89 S.E. 2d at 135-36. Here, the inconsistencies in Stewart's estimate of distances bore upon the weight of his testimony rather than its competency. *Loomis v. Torrence,* 259 N.C. 381, 130 S.E. 2d 540. He testified that he observed the car for 200-300 feet as it approached. Such observation was possible, not only under his estimates but also those of Patrolman Wright and Mrs. Gentry. Furthermore, Marion Seamons, the sister of deceased, who was walking behind him, testified that bus No. 99 "was right next to the sign when the car was coming down the road," and visibility from that point to the east was unobstructed for one-fourth of a mile.

The cases cited by defendant in support of the foregoing assignment of error are inapposite. In *State v. Becker,* 241 N.C. 321, 85 S.E. 2d 327, it was held that observation for 15 feet did not afford a reasonable opportunity for the witness' estimate of speed. In *Fleming v. Twiggs,* 244 N.C. 666, 94 S.E. 2d 821, the court eliminated as having no probative value the testimony of a witness that an automobile, which she saw for only "seven or nine feet or one-half the length of the courtroom," was traveling 70 MPH.

Defendant likewise contends that the trial judge committed reversible error when he permitted Kenneth Crow to testify that, in his opinion, defendant was under the influence of alcohol when he saw him at Weaver's Store. Although the evidence does not definitely establish the lapse of time between the accident and Crow's encounter with defendant, it is a fair inference that Crow saw him before Patrolman Wright did. The officer saw him about fifteen minutes after Seamons' death, and he detected the odor of alcohol about him at that time. The judge did not err when he admitted Crow's testimony, nor when he charged the jury that if they found defendant had been drinking intoxicating liquor they could consider that fact in determining whether he operated the Ford in a criminally negligent manner.

"While the mere act of driving while under the influence of intoxicating liquor is not in itself a sufficient predicate for a conviction of reckless driving, the fact that one charged with reckless driving

had been drinking is a factor to be considered in determining his guilt, and evidence of such drinking is generally recognized as being admissible in a prosecution for reckless driving." 7 Am. Jur. 2d Automobiles and Highway Traffic § 335 (1963). *Accord,* Annot., 52 A.L.R. 2d 1337, 1364 § 22 (1957). Evidence that a defendant had been drinking is a part of the *res gestæ* and one of the circumstances to be considered by the jury in determining whether he is guilty of reckless driving. *State v. Jessup,* 183 N.C. 771, 111 S.E. 523; *accord, State v. Sisneros,* 42 N.M. 500, 82 P. 2d 274; *State v. Birch,* 183 Wash. 670, 49 P. 2d 921; *Huff v. State,* 68 Ga. App. 799, 24 S.E. 2d 227; *Allen v. State,* 273 P. 2d 152 (Okla. Crim.). See also *State v. McMahan,* 228 N.C. 293, 45 S.E. 2d 340; *State v. Gary Tyson Howard, ante* 144. Evidence that an accused was drinking is likewise admissible in a prosecution for involuntary manslaughter arising out of his operation of a motor vehicle. "Such evidence is, of course, directly relevant in a prosecution for involuntary manslaughter by an unlawful act . . . where the unlawful act charged is driving while intoxicated or under the influence of intoxicating liquor. Such evidence is also admissible where the prosecution is for involuntary manslaughter by criminal or culpable negligence resulting in the death of another." 7 Am. Jur. 2d Automobiles and Highway Traffic § 338 (1963). *Accord.,* Annot., 99 A.L.R. at 785-786.

In *Hunt v. State,* 87 So. 2d 584 (Fla.), the defendant was charged with manslaughter growing out of an automobile accident. Evidence that the defendant had been imbibing intoxicating liquors was admitted over defendant's objection. The court held that "it was proper to consider his condition as shedding light on his recklessness." *Id.* at 585. *Accord, Penton v. State,* 114 So. 2d 381; *People v. Emmons,* 114 Cal. App. 26, 299 P. 541; *Wilson v. State,* 94 Okla. Crim. 189, 237 P. 2d 177; *Cannon v. State,* 91 Fla. 214, 107 So. 360. Defendant's assignment of error No. 4 is overruled.

The solicitor was assisted in the prosecution of this case by Mr. Marshall T. Spears, Jr., attorney. Counsel for defendant interrupted Mr. Spears' argument to the jury and moved for a mistrial on the ground that he had commented upon defendant's failure to testify. Mr. Spears denied that he had made such comment, and the record does not contain the statements to which defendant objected. It does disclose, however, that Judge Bickett immediately stopped the argument and instructed the jury that any such comment, if made, would be both improper and incompetent; that a defendant's failure to testify created no presumption against him and could not be used in any way to his prejudice. He then overruled the motion for a mistrial. Thereafter, in his final charge to the jury after the arguments

were completed, the judge again instructed the jury in substantial accord with the instructions given in *State v. Stephens,* 262 N.C. 45, 50, 136 S.E. 2d 209, 213, and *State v. Lewis,* 256 N.C. 430, 124 S.E. 2d 115.

If any improper reference to defendant's failure to testify was made — and the record does not disclose any such impropriety — the prompt action of the trial judge and his repeated instructions cured the error. *State v. Stephens, supra; State v. Lewis, supra;* 2 Strong, N. C. Index 2d, Criminal Law § 102, p. 644 (1967). Defendant's assignment that the judge erred in refusing to declare a mistrial is overruled.

Defendant's objection to the charge is that the judge failed to comply with G.S. 1-180 and that he erred in telling the jury that defendant contended he was not driving the automobile which struck deceased. The first contention is overruled upon the authority of *State v. Robinson,* 272 N.C. 271, 158 S.E. 2d 23. The second likewise cannot be sustained. Defendant offered no evidence, but his plea of not guilty called into question all the State's evidence and required the State to prove every element of the charge against him. *State v. Snead,* 228 N.C. 37, 44 S.E. 2d 359. The first and most crucial question in the case was whether defendant was the driver of the car which struck and killed Seamons. Absent a judicial admission by defendant that he was the driver, it would have been prejudicial error for the judge to assume this fact. It was, therefore, proper for him to tell the jury that defendant contended he was not the driver. In any event, if a judge errs in stating a defendant's contentions, ordinarily the error must be called to his attention in time for him to correct it. *State v. Cornelius,* 265 N.C. 452, 144 S.E. 2d 203. Defendant did not repudiate this contention at the time he heard the judge make it for him. He may not do so now.

Finally, we discuss defendant's assignment of error No. 1, that the judge erred in denying his motion to sequester the State's witnesses. This motion was made at the commencement of the trial, and the record discloses only that after the jury was impaneled "defendant moves to sequester the State's witnesses. Motion overruled. Defendant excepts. This is defendant's exception No. 1."

In this State, as a general rule, witnesses will be separated upon request. Sequestration is, however, discretionary with the trial judge — not a matter of right. Stansbury, N. C. Evidence § 20 (2d Ed. 1963). Our view is succinctly stated in *State v. Spencer,* 239 N.C. 604, 609, 80 S.E. 2d 670, 674: "This jurisdiction, and the great majority of jurisdictions, follow the early English rule that the segregation, separation, exclusion of witnesses, or 'putting witnesses under the rule,' as the procedure is variously termed, is a matter not of

right, but of discretion on the part of the trial judge." A judge's refusal to sequester the State's witnesses is not reviewable unless an abuse of discretion is shown. *State v. Spence,* 271 N.C. 23, 155 S.E. 2d 802; *State v. Love,* 269 N.C. 691, 153 S.E. 2d 381; *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506, *cert. denied,* 384 U.S. 1020, 86 S. Ct. 1936, 16 L. Ed. 2d 1044; 2 Strong, N. C. Index 2d, Criminal Law § 98 (1967); 53 Am. Jur. Trial § 31 (1945). Here, defendant's counsel made a blanket request that the witnesses be sequestered. He assigned no reason for such exclusion at the time he made the request, and no abuse of discretion has been shown.

It appears from the record that defendant has had a fair trial, and in it we find

No error.