STATE v. JAMES LESTER WOODLIEF
No. 6810SC289

(Filed 9 October 1968)

1. **Appeal and Error § 30— necessity for objection to admission of evidence**
    The admission of evidence will not be reviewed on appeal unless timely and proper objection was made in the trial court.

2. **Automobiles § 46— opinion testimony as to speed**
    A person of ordinary intelligence who has had a reasonable opportunity

to observe a vehicle in motion may give his estimate as to the speed at which it was moving.

**3. Automobiles §§ 46, 112—  manslaughter prosecution — opinion testimony as to speed**

In a prosecution for manslaughter growing out of an automobile accident, it is competent for a witness who was a passenger in defendant's automobile to give his opinion that at the time of the accident defendant was driving his vehicle "faster than 100 miles an hour," and an additional statement by the witness that he could not swear that defendant was driving over 100 miles per hour does not render incompetent his previous testimony, the testimony being a colloquial way of expressing an opinion, and inconsistencies in the testimony being a question of credibility within the province of the jury.

**4. Criminal Law § 104—  motion to nonsuit — consideration of evidence**

On motion to nonsuit, the evidence is to be considered in the light most favorable to the State, and the State is entitled to every inference of fact which may reasonably be deduced from the evidence, contradictions and discrepancies being for the jury to resolve and not warranting nonsuit.

**5. Criminal Law § 109—  motion for directed verdict**

The motion for a directed verdict of not guilty, like the motion of nonsuit, challenges the sufficiency of the evidence to go to the jury.

**6. Criminal Law § 158—  charge presumed correct when not in record**

Where the charge of the court is not in the record, it is presumed that the jury was charged correctly on all aspects of the case.

**7. Automobiles § 113—  manslaughter — culpable negligence — sufficiency of evidence**

In a prosecution for manslaughter, defendant's motions for nonsuit and directed verdict were properly denied where the State's evidence tended to show that deceased was a passenger in an automobile driven by defendant at more than 100 miles per hour, that defendant ignored pleas by deceased and another passenger to slow down, and that the automobile wrecked, resulting in the death of the deceased, the evidence being sufficient to support a finding that defendant driver was guilty of an intentional, wilful or wanton violation of a safety statute or an inadvertent violation of such statute accompanied by recklessness or probable consequences of a dangerous nature amounting to a thoughtless disregard of consequences or heedless indifference to the safety and rights of others, and that such conduct proximately caused the passenger's death.

APPEAL from *Bickett, J.,* April 1968 Session, WAKE County Superior Court.

The defendant was tried on a proper bill of indictment charging him with the felonious killing of Larry Booth, on 2 March 1968. The defendant through his personally-employed attorney entered a plea of not guilty. The jury returned a verdict of guilty of involuntary

manslaughter and the court imposed a sentence of not less than four years, nor more than seven years, with recommendation that he be confined in a youthful offenders camp and with an opportunity to serve under the work release program.

The defendant took an appeal and brings forward for review two questions: one involving the admission of evidence and the other directed to the trial court's failure to sustain a motion of nonsuit at the conclusion of the State's evidence and to direct a verdict of not guilty at the conclusion of all of the evidence.

*Earle R. Purser and Carl E. Gaddy, Jr., Attorneys for defendant appellant.*

*T. W. Bruton, Attorney General, and Ralph Moody, Deputy Attorney General, for the State.*

CAMPBELL, J.

[7]     The evidence on behalf of the State tends to show that on 2 March 1968 Tim Douglas Lee, a 21-year old member of United States Navy, Larry Booth, the deceased, and the defendant met at a filling station in Raleigh "where everybody hangs out." The defendant was the owner of a 1967 Chevelle automobile. The three, who were all acquaintances of a year or more, rode around in the front seat of the defendant's automobile. Lee drove the automobile in the country; then Booth wishing to drive the automobile began to do so. At an intersection Booth stopped the automobile since the defendant wanted "to drive his car." Lee testified: "So we pulled off on the shoulder of the road and Jimmy Woodlief started driving. He started off spinning the tires. We were on the Falls of Neuse Road when Jimmy started driving the car. We were approximately a mile from that Catholic Church on the Falls of Neuse Road where we had the wreck at when Jimmy started driving the car. When Jimmy Woodlief started driving he started off spinning tires and he didn't slow up until we had the wreck. No other cars were involved. We tried to get him to slow down, and he just kept right on going. Larry Booth told Jimmy Woodlief he ought to slow down and Jimmy didn't do anything, didn't say anything or nothing. He just kept right on going, and I told him he ought to slow down and me and Larry got down in the floorboard of the car because Larry told him he knowed he couldn't make the curve. I was not familiar with the road. Larry did not live out there anywhere. Jimmy Woodlief was driving and he just went right on and me and Larry got down in the floorboard, and the next thing I know I heard gravel and all going up under the

car. I don't remember anything else until he hit all the trees and all. . . ."

The deceased, Larry Booth, was thrown out of the car on the passenger's side. The defendant was thrown out of the car on the driver's side. The witness Lee was thrown partially through the windshield and was hanging in that position.

T. C. Cherry, a member of the North Carolina State Highway Patrol, investigated the wreck. He arrived at the scene at 10:10 p.m., 2 March 1968, and found a blue 1967 Chevelle automobile in the yard at Raphael Church. The church and the automobile were located on the westerly side of the road. The automobile had been going in a southerly direction. There was a curve in the road to the east and the automobile, instead of going around the curve to the east, had gone straight ahead off the westerly shoulder of the road. The officer testified that he measured marks from the automobile in a northerly direction for 700 feet. Starting at the automobile the marks went 100 feet to a tree, then another 122 feet to a hedge. The marks were not continuous, there being skips in them. The marks went straight off the road while the curve in the road was to the left. The hedge was approximately six feet tall and was damaged slightly in the top. The entire motor of the automobile was found approximately forty feet away from the automobile. The officer testified that he went about a mile north of where the automobile was found to the point where the witness Lee told him the defendant had started driving. There he found "approximately thirty foot of marks, started on the edge of the right shoulder, come back in the road at an angle and then got straightened up before it stopped. It's what we commonly refer to as 'scratch off' marks, a rubber mark. I found these marks that I have described exactly one mile from where I found the automobile." With regard to the automobile, the officer stated: "The car was a total loss, both sides and the top were entirely demolished. The motor was some forty feet from the automobile towards the road at an angle. The door, chrome and all kinds of parts of the car were scattered over the area from the hedge to the car."

[3] The defendant assigns as error the following testimony of the witness Lee: "Sir he was driving it faster than 100 miles an hour."

The record of the direct examination of the State's witness Lee discloses the following:

"Q. Do you have an opinion satisfactory to yourself as to how fast the defendant was driving his car at the time of the wreck, or just before it happened?

A. Yes sir.

Q. All right, in your opinion, approximately how fast was the defendant driving his car just before and at the time of the wreck?

A. Sir he was driving it faster than 100 miles an hour.

Objection and motion to strike.

COURT: Overruled (Without further questioning, the witness continued)

I couldn't swear he was driving it over 100 miles an hour, but he was driving well over the speed limit. I did not look at the speedometer. I just glimpsed the speedometer one time when he was driving that night and it was moving over and that's all."

[1] The defendant had the burden of interposing a timely objection, but no objection was made until after the question was answered. Stansbury, N. C. Evidence 2d, § 27. It is well established that "an objection to testimony not taken in apt time is waived." *State v. Hunt,* 223 N.C. 173, 25 S.E. 2d 598; *State v. Merrick,* 172 N.C. 870, 90 S.E. 257. "The admission of evidence will not be reviewed on appeal unless timely and proper objection was made in the trial court." Stansbury, *supra.*

[2, 3] Not only was the objection not timely made, but the testimony itself was competent. The witness Lee had operated the vehicle a short time prior to the accident and was, thus, familiar with it. At the time of the accident, he was still a passenger in the vehicle, hence, he had ample opportunity to observe and judge the speed. "A person of ordinary intelligence who has had a reasonable opportunity to observe a vehicle in motion may give his estimate as to the speed at which it was moving." *State v. Clayton,* 272 N.C. 377, 158 S.E. 2d 557. The additional statement by the witness to the effect that he could not swear that the defendant was driving over a 100 miles an hour, while somewhat inconsistent with his previous answer, does not have the effect of nullifying the testimony. It is simply a question of credibility which is within the province of the jury. Stansbury, N. C. Evidence 2d, § 46. It would all come within the "colloquial way of expressing an estimate or opinion." *State v. Clayton, supra.*

This assignment of error is overruled.

[4] The second assignment of error was to the denial of the motion for judgment as in case of nonsuit entered at the close of the State's evidence and the failure to direct a verdict of not guilty at the close of all of the evidence.

"The practice is thoroughly settled in this jurisdiction that on a motion to nonsuit, the evidence is to be considered in its most favorable light for the State, and the State is entitled to every inference of fact which may reasonably be deduced from the evidence, and contradictions and discrepancies in the State's evidence are for the jury to resolve and do not warrant the granting of the motion of nonsuit." *State v. Carter,* 265 N.C. 626, 144 S.E. 2d 826.

[5]    Like the motion of nonsuit "(t)he motion for a directed verdict of not guilty challenges the sufficiency of the evidence to go to the jury." *State v. Wiley,* 242 N.C. 114, 86 S.E. 2d 913; *State v. Glover,* 270 N.C. 319, 154 S.E. 2d 305.

An appraisal of the record discloses evidence sufficient to withstand the motion for nonsuit and to support a denial of a motion for a directed verdict. *State v. Ward,* 258 N.C. 330, 128 S.E. 2d 673; *State v. Macon,* 252 N.C. 333, 113 S.E. 2d 426.

The defendant himself did not testify, but he offered testimony from witnesses tending to show the possibility that the defendant was not the driver of the vehicle at the time of the wreck.

[6]    The charge of the court to the jury was not brought forward in the record and, therefore, it is presumed that the jury was charged correctly on all aspects of the case and that the jury was properly instructed as to any violation of the statutes designed for the protection of human life or limb. *State v. Cooper,* 273 N.C. 51, 159 S.E. 2d 305.

[7]    "There is ample evidence revealed on this record to take the case to the jury and to support the verdict rendered." *State v. Bryant,* 250 N.C. 720, 110 S.E. 2d 319. The evidence supports either a finding "that defendant . . . was guilty of an intentional, wilful or wanton violation of a statute designed for the protection of human life and limb . . . or (that defendant was) guilty of an inadvertent violation of such statute accompanied by recklessness or probable consequences of a dangerous nature amounting altogether to a thoughtless disregard of consequences or heedless indifference to the safety and rights of others, and . . . that such violation and conduct was the proximate cause of the injury and resulting death of deceased." *State v. Hewitt,* 263 N.C. 759, 140 S.E. 2d 241; *State v. Cope,* 204 N.C. 28, 167 S.E. 456; G.S. 20-140; G.S. 20-141. Without question, the defendant's "conduct violated statutes enacted for the safety of the traveling public and was incompatible with a proper

regard for human life." *State v. Narron,* 257 N.C. 771, 127 S.E. 2d 551.

The record in this case reveals no prejudicial error.

Affirmed.

MALLARD, C.J. and MORRIS, J., concur.