STATE v. JAMES MILLARD SNYDER

No. 6825SC356

(Filed 20 November 1968)

**1. Bastards § 6— failure to support illegitimate child — nonsuit**

In prosecution for the wilful refusal of defendant to support his illegitimate child, evidence of defendant's guilt of the offense is sufficient to be submitted to the jury where the prosecuting witness testifies that defendant was the father of her child, that her last menstrual period prior to meeting defendant had been in April, that she met defendant and began having sexual relations with him in May and that she continued doing so until July, that from the time she first met defendant until the birth of her child in December she did not date or go out with any other men, and that, despite demand, defendant had never contributed to the support of the child although he was able to do so.

**2. Criminal Law § 98— custody of witnesses — intimidation of other witnesses**

In prosecution of defendant for wilful refusal to support his illegitimate child, trial court's action in placing two of defendant's witnesses in custody after they had testified to having sexual relations with the 15-year-old mother was not improper on the ground that other witnesses were thereby intimidated, since the record did not show that any other witness was tendered or called or that an effort was made to produce any other witness.

**3. Criminal Law § 98— custody of witnesses — expression of opinion by trial court**

In prosecution of defendant for the wilful refusal to support his illegitimate child, trial court's action in placing two of defendant's witnesses in custody and ordering them to be charged with contributing to the delinquency of a minor after they had testified to having sexual relations with the 15-year-old mother on several occasions *is held* not to constitute an expression of opinion in violation of G.S. 1-180, since the witnesses were placed in custody during the absence of the jury from the courtroom.

**4. Criminal Law § 80— testimony to contents of medical records**

In prosecution for wilful refusal of defendant to support his illegitimate

child, trial court properly admitted testimony of the prosecuting witness' attending obstetrician that the records in his office revealed that the mother had told the nurse that her last menstrual period was on a certain date, since the records were kept by his nurse in the regular course of business.

**5. Bastards § 6— nonsupport prosecution — nonsuit — weight of opinion testimony**

In prosecution for wilful failure of defendant to support his illegitimate child, testimony of prosecutrix' attending obstetrician that the period of gestation is thirty-six weeks is an expression of opinion and is not binding on the State.

**6. Bastards § 7— failure to support illegitimate child — instruction on periods of gestation**

In a prosecution for the wilful failure to support an illegitimate child, an instruction that the jury may take judicial notice that the normal period of gestation is 7, 8, 9, 9½, or 10 months is not prejudicial.

**7. Criminal Law § 113— instructions on reasonable doubt and presumption of innocence**

Trial court did not err in failing to define the terms "reasonable doubt" and "presumption of innocence" where there was no request for special instructions as to the meaning of these terms.

**8. Criminal Law §§ 88, 93— order of proof — discretion of trial court**

In a prosecution for the wilful failure to support an illegitimate child, where defendant offered no objection, action of trial court in allowing solicitor to place the mother on the witness stand for a few qualifying questions before putting her doctor on the stand, in order to accommodate the doctor by keeping him in court as short a period of time as possible, is within the discretion of the court and is not error as a denial of defendant's right of cross-examination.

APPEAL by defendant from *Falls, J.,* May 1968 Session, CALD-WELL County Superior Court.

Defendant was tried on a warrant issued 8 January 1968 charging him with unlawfully and willfully neglecting and refusing to provide support for his two weeks old illegitimate daughter, after demand having been made. To the charge, the defendant entered a plea of not guilty. From a jury verdict of guilty and imposition of sentence, the defendant appealed assigning various errors in the trial. The facts are set forth in the opinion.

*T. W. Bruton, Attorney General, by Bernard A. Harrell, Assistant Attorney General, for the State.*

*Wilson & Palmer by Hugh M. Wilson, Attorneys for defendant appellant.*

CAMPBELL, J.

[1]    The first contention of the defendant is that the trial judge
erred in denying his motion for nonsuit. The mother of the child tes-
tified that while she had had sexual relations with some six or seven
young men prior to the defendant, the last time had been in the
month of January 1967 with Randal Snyder, the defendant's second
cousin. She further testified that her last menstrual period had been
22 April 1967; that she met the defendant on 21 May 1967; that she
began having sexual relations with him the following day, 22 May
1967; that she continued doing so until sometime during the month
of July 1967; and that from the time she first met the defendant
until her baby girl was born on 27 December 1967, she did not date
or go out with any other men. The mother, who became sixteen
years of age on 12 September 1967, testified that the defendant was
the father of her child. There was also corroborating evidence, in-
cluding a purported statement from the defendant himself that he
knew he was the father of the child.

After the birth of the child and before the warrant was issued,
demand for support was made upon defendant by the brother-in-law
of the mother. The defendant never contributed anything to the
support, and he was able to do so.

> "The practice is thoroughly settled in this jurisdiction that on
> a motion to nonsuit, the evidence is to be considered in its most
> favorable light for the State, and the State is entitled to every
> inference of fact which may reasonably be deduced from the
> evidence, and contradictions and discrepancies in the State's
> evidence are for the jury to resolve and do not warrant the
> granting of the motion of nonsuit." *State v. Carter,* 265 N.C.
> 626, 144 S.E. 2d 826; *State v. Bryant,* 250 N.C. 113, 108 S.E.
> 2d 128; *State v. Woodlief,* 2 N.C. App. 495, 163 S.E. 2d 407.

This assignment of error is overruled.

[2]    The second contention of the defendant is that the trial judge
committed error in placing two of his witnesses in custody after
they had testified. The first such witness was the defendant's cousin,
Randal Snyder, who testified to having sexual relations with the
fifteen year old mother on several different occasions. After his tes-
timony had been concluded the jury was excused and, in the ab-
sence of the jury, the trial judge ordered the witness taken in cus-
tody to be charged with contributing to the delinquency of a minor.
The second such witness was another cousin of the defendant, Joe
Snyder, who testified to having sexual relations with the fifteen year

old mother in company with the defendant on the one occasion he saw her. At the conclusion of his testimony, the jury again was excused and he, too, was placed in custody. Both witnesses were removed from the courtroom prior to the return of the jury. No explanation or comment was made about their absence in the presence of the jury. The defendant did not request the return of either of these witnesses for purposes of rebuttal.

The defendant contends that other witnesses were intimidated by this action on the part of the trial judge; however, the record does not reveal such intimidation. There is nothing in the record to show that any other witness was tendered or called or that an effort was made to produce any other witness. It is not to be presumed that such additional witnesses, if any, would have committed perjury if they had been offered.

[3]    This action on the part of the trial judge did not constitute an expression of opinion in violation of G.S. 1-180 since no doubt was cast upon the testimony of these witnesses and since their credibility was in no way impeached. The present situation is clearly distinguishable from *State v. McNeill*, 231 N.C. 666, 58 S.E. 2d 366, and *State v. McBryde*, 270 N.C. 776, 155 S.E. 2d 266, where, in each instance, the witness was taken into custody under such circumstances that the jury observed it.

This assignment of error is overruled.

[4]    The third contention of the defendant is that the trial judge erred in admitting testimony of Dr. Segars to the effect that the records in his office which were kept by his nurse revealed that the mother had told the nurse that her last menstrual period was 22 April 1967.

The mother testified that Dr. Segars was her attending obstetrician; that she first went to him in November 1967 before her child was born 27 December 1967; and that she told him her last menstrual period was in April 1967. The doctor was testifying as to what the records in his office showed. These records were kept by his nurse in the regular course of business and were clearly admissible. "If the entries were made in the regular course of business, at or near the time of the transaction involved, and are authenticated by a witness who is familiar with them and the system under which they were made, they are admissible." Stansbury, N. C. Evidence 2d, § 155.

The testimony of Dr. Segars was offered for the purpose of corroborating the mother as to what she had told him. On cross-exam-

ination of the mother following the admission of this testimony, she was asked:

"Q   You did, I believe, tell the doctor that you had a period, told somebody, that you had one on the 22nd of April?

A   Yes, sir.

Q   Is that correct?

A   Yes, sir."

This assignment of error is overruled.

**[5, 6]**   The fourth contention of the defendant is that the trial judge committed error in charging the jury:

"Upon the first issue, the Court instructs you that the reasonable period of gestation prior to the birth of a human child is approximately seven, eight, nine, nine and one-half, or ten months prior to the birth of the baby, which period of time, members of the jury, and the Court can judicially notice, is the normal period of gestation. So, the Court instructs you, members of the jury, if you should find from the evidence and beyond a reasonable doubt, the burden being upon the State to so satisfy you, that the defendant James Millard Snyder had sexual intercourse with the prosecuting witness, Pamela Duckworth, on or about the latter part of May, 1967, and within a reasonable period of gestation Pamela Duckworth gave birth to the baby, Claudia Jean Duckworth; and that the defendant is the father of the child, then in that event you would answer the first issue YES. Otherwise, you would answer it No."

The defendant argues that since Dr. Segars testified that in his opinion the period of gestation was thirty-six weeks, it was therefore mathematically impossible for the defendant to be the father of the baby. The testimony of Dr. Segars was an expression of his opinion, and it was not binding upon the State, for as previously pointed out, "contradictions and discrepancies in the State's evidence are for the jury to resolve." The taking of judicial notice that the normal period of gestation is between seven and ten months has been sustained by the Supreme Court, and a charge to that effect was approved in *State v. Key*, 248 N.C. 246, 102 S.E. 2d 844. The charge in the instant case is not deemed prejudicial.

This assignment of error is overruled.

**[7]**   The fifth contention of the defendant is that the trial judge erred in failing to define the terms "reasonable doubt" and "presumption of innocence."

There was no request for special instructions.

"The remaining exceptions are to the effect that the court in the charge used phrases such as 'presumption of innocence,' 'burden of proof,' *'quantum'* and 'reasonable doubt,' but did not define or explain them to the jury. The record shows no request that these terms be defined and in *S. v. Browder,* 252 N.C. 35, 112 S.E. 2d 728, the court held that it did not constitute error to fail to define 'reasonable doubt' in the absence of a request. A similar holding as to 'presumption of innocence' appears in *S. v. Perry,* 226 N.C. 530, 39 S.E. 2d 460 and the same reasoning will apply to the other terms and phrases." *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548.

This assignment of error is overruled.

The sixth contention of the defendant is that the trial court committed error in failing to set the verdict aside. For the reasons previously stated above, it was not error for the trial court to refuse to set the verdict aside. The evidence was sufficient to sustain the verdict.

This assignment of error is overruled.

[8]   The seventh contention of the defendant is that the trial court committed error in failing to permit the defendant to cross-examine the mother when she first testified. The record discloses that in order to accommodate Dr. Segars by keeping him in court as short a period of time as possible, the solicitor on behalf of the State announced at the beginning of the trial that he desired to place the mother on the witness stand for a few qualifying questions before putting the doctor on the witness stand. In the discretion of the court, this procedure was accordingly followed. The mother, who subsequently resumed her direct examination and was cross-examined by the defendant, was withdrawn after the qualifying questions. The record reveals no objection on the part of the defendant, but in the instant case the trial court, in its discretion, could have followed this procedure even if there had been an objection. 7 Strong, N. C. Index 2d, Trial, § 5, p. 260. *A fortiori* in the absence of any objection there was no error.

This assignment of error is overruled.

A review of the entire record discloses that the defendant has had a fair and impartial trial free of any prejudicial error.

No error.

MALLARD, C.J., and MORRIS, J., concur.